## SHELDON v. GRAND RIVER DAM AUTHORITY et al.

No. 28318.   Feb. 1, 1938.

L. Keith Smith, for plaintiff in error.

C. B. Cochran and R. L. Wagner, amici curiae.

Mac Q. Williamson, Atty. Gen., Randell S. Cobb, Asst. Atty. Gen., R. L. Davidson, and Jack L. Rorschach, for defendants in error.

HURST, J. This action involves the constitutionality of an act of the Legislature and an amendment thereto creating the Grand River Dam Authority. The act (chapter 70, art. 4, Sess. L. 1935) creates a conservation and reclamation district consisting of that area included within the boundaries of 17 counties located in the northeast part of the state; namely, Adair, Cherokee, Craig, Delaware, Mayes, Muskogee, Nowata, Ottawa, Rogers, Tulsa, Wagoner, Sequoyah, Osage, Washington, McIntosh, Creek, and Okmulgee. The district is declared to be a "governmental agency and body politic and corporate, with the powers of government." The act provides that nothing therein contained "shall be construed as authorizing the district to levy or collect taxes or assessments, or to create any indebtedness payable out of taxes or assessments, or in any manner to pledge the credit of the state of Oklahoma, or any subdivision thereof." The act contemplates the construction of a dam on Grand river with the erection of a hydroelectric power plant, which will also make available the water necessary for irrigation. soil conservation, and recreational purposes and will facilitate in flood control. The act provides that the district cannot engage in the retail marketing of electric power, but can sell it only at the turbines for wholesale purposes. It provides for the. creation of a board of nine directors, requiring that they be "residents of and freehold property taxpayers in the district," and sets out in detail the powers, rights, and privileges to be exercised. The district is given authority to issue bonds, not to exceed $15,-000,000, payable solely out of the revenues received by the district from the sale of electric power and other revenues received in respect to its properties. The act further provides that before any bonds shall be sold, a certified copy of the proceedings for the issuance thereof shall be submitted to the Attorney General, and if he shall find that they have been issued in accordance with law, he shall approve them and issue his certificate to that effect, which shall be filed in the office of the State Auditor.

The amendment (chapter 70, arts. 1 and 2, Sess. L. 1937) does not re-enact the

1935 act in its entirety, but merely eliminates three counties, Rogers, Osage, and Washington, from the district, and also eliminates any restriction on the retail marketing of electric power.

Plaintiff is a property owner and taxpayer within the district and brought this action seeking an injunction to prevent the Grand River Dam Authority from proceeding to issue bonds as authorized by the act. The injunction was denied and plaintiff brings this appeal. He presents 20 reasons for asserting the unconstitutionality of the act. The principal contentions are: (1) That the legislation is local or special and violative of sections 32, 46, and 59 of art. 5 of the state Constitution; and (2) that it violates the debt limitation provisions of sections 23, 25, and 26 of art. 10 of the state Constitution. Amici curiae briefs have been filed in which it is asserted that the act is violative of sections 32 and 59 of art. 5, and section 26 of art. 10, of the Constitution.

The first contention of the plaintiff and of the amici curiae is that the act is special or local, rather than general, legislation, and violates sections 32, 46 and 59 of art. 5 of the Constitution. Section 32 of this article provides that "no special or local law shall be considered by the Legislature until notice of the intended introduction" thereof shall have been published in some newspaper in the "city or county affected by such law." Section 46 provides that no local or special law upon 28 specified subjects shall be passed. Section 59 requires that "laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

It is stipulated that no notice was published as required by section 32, but the contention of the defendants in answer to the application of all of these sections is that the act is general, and not special or local. The first question is regarding the test for determining whether an act is special and local or general. The defendants, or proponents of the act, contend that any law is a general law if it deals with a "subject-matter that is of general interest and state-wide concern, although it may have a restricted or local operation." On the other hand, amici curiae contend that the fact that a law may be enacted for a public purpose does not make it a general law if, by its terms, it is confined in its operation to property and persons of a particular locality of the state. Without determining whether the position of the

defendants has been misunderstood, as they claim, it is clear that by reason of section 59, an act to be general must have a uniform operation throughout the state. It is not necessary that it shall operate upon every person and every locality in the state. A law may be general and have a local application or apply to a designated class if it operates equally and uniformly upon all the subjects within the class for which it was adopted, and upon all persons and parts of the state that are brought within the relation and circumstances provided by it. It must affect alike all persons in like situations, and where it operates upon a class, the classification must not be arbitrary or capricious, but must be reasonable, and pertain to some peculiarity in the subject-matter calling for the legislation. This principle is discussed in the following cases: Burks v. Walker (1909) 25 Okla. 353, 109 P. 544; Leatherock v. Lawter (1915) 45 Okla. 715, 147 P. 324; Coyle v. Smith (1911) 28 Okla. 121, 113 P. 944; School Dist. No. 85 v. School Dist No. 71 (1928) 135 Okla. 270, 276 P. 186; City of Sapulpa v. Land (1924) 101 Okla. 22, 223 P. 640.

In Leatherock v. Lawter, supra, it is said:

"Whether an act of the Legislature be a local or general law must be determined by the generality with which it affects the people as a whole rather than the extent of territory over which it operates, and if it affects equally all persons who come within its range, it is neither local nor special."

In 59 C. J. 730, it is said:

"While a statute which is applicable to all of the people of the state and which operates in all parts of the state is most general in its character, it is not necessary that a law, in order to be general, shall affect all of the people of the state, or all of the state, nor need it include all classes of individuals; it may be intended to operate over a limited number of persons or things, or within a limited territory, and if every person or locality brought within the relations and circumstances provided for by the law is affected, the law may be general although presently operative on but a single individual, or thing, place, or political subdivision, such as a county or municipal corporation; and its general character is not affected by the number of persons, things, or localities which come within the scope of its operation."

Defendants rely, by way of analogy, upon cases sustaining the validity of acts establishing superior courts in all counties having a certain population, with cities therein of a certain population (Burks v.

Walker, supra; Herndon v. Anderson [1933] 165 Okla. 104, 25 P. (2d) 326), and also establishing a superior court on the basis of population, effective actually in only one county, and abolishing the same (Leatherock v. Lawter; supra), and an act providing for an additional district judge in one judicial district, and prescribing the manner of nomination and election (Munroe v. McNeill [1927] 122 Okla. 297, 255 P. 150). They further rely upon cases upholding an act locating the state capital (Coyle v. Smith ,[1911] 28 Okla. 121, 113 P. 944), and an act authorizing the Highway Commission to enter into a contract for acquiring a toll bridge (Foley v. State [1932] 157 Okla. 202, 11 P. (2d) 928). It will be noticed that in all of these cases the court concluded that there was a reasonable, substantial basis for classification, bearing a rational relationship to the subject matter, and that the acts operated uniformly on all persons coming within their scope. Under the rules above stated regarding the test for determining whether a law is special or local, or general, these acts are properly designated general laws.

On the other hand, the plaintiff and amici curiae rely upon a great number of cases holding invalid certain legislation dealing with the offices of the justice of the peace, township officers, county commissioners, excise boards, methods of foreclosure and liquidation of assessment liens and back taxes, and other acts relating to school districts and county officers. Levine v. Allen (1923) 96 Okla. 252, 221 P. 771; Key v. Donnell (1924) 107 Okla. 157, 231 P. 546; Hudgins v. Foster (1928) 131 Okla. 90, 267 P. 645; Roberts v. Ledgerwood (1928) 134 Okla. 152, 272 P. 448; City of Sapulpa v. Land, supra; Welch v. Holland (1936) 177 Okla. 585, 61 P. (2d) 559; School Dist. No. 85 v. School Dist. No. 71, supra; Board of Com'rs of Grady County v. Hammerly (1922) 85 Okla. 52, 204 P. 445; Robinson v. Board of Com'rs (1931) 151 Okla. 100, 1 P. (2d) 660; Madden v. Excise Board of Harmon County (1932) 160 Okla. 170, 16 P. (2d) 259; White v. Infield (1926) 122 Okla. 4, 250 P. 81, and others. They also rely upon a case holding invalid portions of a legislative act regulating the practice and procedure in district courts different than as prescribed by general law (Diehl v. Crump [1919] 72 Okla. 108, 179 P. 4), and a case imposing different duties on a district judge than imposed by general law (C., R. I. & P. Ry. v. Carroll, Brough, Robinson & Humphrey [1925] 114 Okla. 193, 245 P. 649). But it is likewise important to notice that in all

of these cases the court concluded that the classification was not made upon a real, substantial distinction, but was arbitrary and capricious, 'and was specifically prohibited by section 46. Thus these cases reflect the operation of the rule, but are not decisive of the effect of the present act, and it must be decided upon its own merits, tested by the rules announced above. In Lewis' Sutherland, Statutory Construction (2d Ed.) p. 365, it is said:

"Whether or not an act is class legislation, or whether or not it is a general, or special law, depends fundamentally upon a question of classification. When an act is assailed as class or special legislation, the attack is necessarily based upon the claim that there are persons or things similarly situated to those embraced in the act, and which by the terms of the act are excluded from its operation. The question then is whether the persons or things embraced by the act form by themselves a proper and legitimate class with reference to the purposes of the act. It is agreed on all hands that the Constitution does not forbid a reasonable and proper classification of the objects of legislation. The question is, What is reasonable and proper in the premises? No definite or absolute rule can be laid down by which the question can be determined in all cases, but the question must be determined in each case as it arises, and for that case alone."

(a) Mention has been made, by both parties, of the provisions of the act securing free public use of the water to be impounded by the dam for recreational purposes and providing means of enforcement at the instance of "any citizen of Oklahoma." There can be no doubt but that this feature of the act is uniform in its operation. The amici curiae do not contend otherwise, but merely insist that these provisions do not prevent the act from being local or special in other respects. With this we agree.

(b) It is argued that the act does not have a uniform operation throughout the state and is therefore special or local legislation, because it restricts the selection of a board of directors from residents of the district. The act requires that the directors be residents and freehold property taxpayers of the district, but there is nothing in that provision contrary to the requirements of the Constitution. To require the powers, rights, privileges, and functions of the act to be carried out by those who are property owners and residents of the area within which the project will be constructed, is not an arbitrary or capricious classification. It is reasonable to presume that taxpaying residents of that area are better equipped

to administer the act than those of other parts of the state. To all those similarly situated, the act operates equally, and there is nothing to prohibit the appointment of anyone who shall move into the district and bring himself within the requirements provided.

(c) It is next contended that the act is special or local because it limits the sale of water for irrigation and other purposes to that land within the boundaries of the district. The act provides that it shall have the authority "to control, store and preserve, within the boundaries of the district, the water of the Grand river and its tributaries for any useful purpose, and to use, distribute and sell the same within the boundaries of the district"; and further, "that nothing herein shall prevent the district from selling for irrigation purposes within the boundaries of the district any water impounded by it under authority of law." It is argued that this provision is local and special for the reason that not even those people of the state within the watershed area of the Grand river and its tributaries, but outside the district, are entitled to participate in the irrigation project. But the classification as to area is reasonable as applied to irrigation, and there is nothing in the record to indicate that the boundary designated by the district is not the proper extent of the area which could reasonably be irrigated by this project. There is no evidence that anyone outside the district will be arbitrarily deprived of water for irrigation or other purposes, and this court will take judicial notice of the fact that practically the entire watershed area of the Grand river is within the district, and that it is not feasible to sell and transport water outside the district. 59 C. J. 59, 60. The fact that the district covers a greater area than the watershed is immaterial.

(d) It is next contended that the act is special or local because the sale of electric power is limited to the district. Even considering the 1935 act as separate from the 1937 amendment, we find no such limitation. By the 1935 act, the sale of electric power was limited to wholesale marketing at the turbines, but it would be available to anyone throughout the state who cared to so purchase it. By the 1937 amendment, the limitation against retail marketing was eliminated and the electric power can be sold to anyone in the state. The engineer on behalf of defendants testified that "it is possible to serve every part of the state from a physical standpoint."

(e) It is next contended that the provision regarding the prevention of soil erosion and flood control does not operate uniformly upon all the people of the state or any properly constituted class, thus rendering the act special or local. The act authorizes the district "to forest and reforest and to aid in the foresting and reforesting of the watershed area of the Grand river and its tributaries and to prevent and to aid in the prevention of soil erosion and floods within said watershed area." The class designated in this provision includes all those within the watershed area. and considering the subject matter of the legislation in this regard, it seems clear that the classification is reasonable and the act operates uniformly upon all those included therein.

(f) It is contended that the act is special and local in that it designates the counties by name and the classification is therefore arbitrary and capricious. But in Tucker v. Mullendore (1937) 180 Okla. 180, 69 P. (2d) 35, in dealing with an act providing for grazing district, excluding 40 counties from the operation thereof by name, this court held that such classification was not unreasonable, arbitrary, or capricious, and sustained the act as a general law. Thus the fact that the area contemplated by the act is designated by counties does not alone render the act invalid, if the area included within the counties named reflects a reasonable classification, having regard to the subject matter of the legislation.

(g) Amici curiae further contend that the act is special and violative of section 59, art. 5, of the Constitution, in that a general law can be made applicable, and they attempt to demonstrate this by showing that a general law is now in force relating to conservation and reclamation districts (article 5, ch. 70, O. S. 1931, as amended by article 5, chapter 70, S. L. 1935). Our attention is called to six particulars wherein the act excepts this district from the operation of general laws now in force or which could be enacted. Although the existing general laws might cover certain features of the act, yet this act embraces a subject not purported to be covered by the general conservation and reclamation law, or any other general law referred to above, that is, the production and sale of electric power in the manner contemplated herein. The act does not purport to amend the general conservation law or any other law, but is an independent act dealing with a particular subject matter, and, if general, will supersede all general laws which relate to the same subject matter. Norton-Johnson Buick Co. v. Lindley (1923) 173 Okla. 93, 46 P.

(2d) 525; State ex rel., etc. v. Weber County Irrigation Dist. (Utah, 1923) 218 P. 732.

We conclude that the act in question has a uniform operation throughout the state and that the classification and distinctions made therein are reasonable and have a sound and rational relation to the subject matter of the legislation, and affect equally all coming within its scope. Therefore, we hold that the act is general legislation, and is not special or local, and does not conflict with sections 32, 46, and 59 of art. 5 of the Constitution. This holding makes it unnecessary for us to pass upon the contention of the defendants that the act is a general act by reason of the fact that it was enacted pursuant to a specific grant of power in section 31 of art. 2 of the Constitution.

2. The second principal contention of plaintiff is that the act creates an indebtedness in violation of sections 23, 25, and 26 of art. 10 of the state Constitution. The amici curiae contend that the act falls within section 26, and by reason of that section alone. the act is unconstitutional. Sections 23 and 25 refer to the creation of indebtedness by the state, and section 26 provides that "no county, city, town, township, school district. or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding. in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose," and making certain other requirements not material here. The amici curiae argue that the act creates a "political corporation. or subdivision of the state" within the meaning of section 26, and that the special fund doctrine has been rejected in its entirety in this state with regard to section 26, although admitting that it may be applied in its restricted sense to state debts within the meaning of sections 23 and 25. They rely upon the cases of Zachary v. City of Wagoner (1930) 146 Okla. 268, 292 P. 345, and City of Tecumseh v. Butler (1931) 148 Okla. 151, 298 P. 256.

On the other hand, the defendants rely upon the rule of ejusdem generis, that is, where general words follow the enumeration of particular classes of things, the general words will be construed as applicable only to things of the same general nature or class as those enumerated. Thus they argue that the words "or other political corporations, or subdivisions of the state," refer to corporations or subdivisions of the same class as those enumerated, which are counties, cities, towns, townships, and school districts, and it is contended that the Grand River Dam Authority is not of such class. The amici curiae take no exception to the application of this rule, but contend that the Authority is of the same general nature and character as those subdivisions enumerated, in that it is declared to be a "governmental agency and body politic and corporate, with the powers of government." They point out that the Authority has practically all the powers, rights, and privileges which are vested in counties, cities, towns, and townships, and assert that there is no material difference between them. But by the terms of the act in question, the people have no voice in the management or government of the Authority, and no power of taxation has been conferred as in the case of counties, cities, towns, townships, and school districts. The Authority was not organized for political or governmental purposes, and does not possess political or governmental powers other than necessary to carry out the specific purposes for which it was created. The board of directors is appointed by state officers, and the people of the district have no voice in their selection. In these respects the corporation is analogous to the Oklahoma Agricultural and Mechanical College. The waters and potential electric energy of the Grand river are the natural resources of the state, and stripped of all its detail, the act creates an agency through which the state seeks to exploit, preserve, and utilize in a certain and specific manner that portion of its natural resources. The purpose of the act is analogous to that of an irrigation district, and in Wood v. Imperial Irr. Dist. (1932, Cal.) 17 P. (2d) 128, it is held that an "irrigation district is not, strictly speaking, 'municipal corporation', nor is it 'political subdivision of state or county' or 'political subsidiary.'" We therefore conclude that, under the rule of ejusdem generis, the act does not create a "political corporation, or subdivision of the state" within the meaning of section 26 of art. 10. Rather, it creates a governmental agency or public corporation, with limited powers, for the purpose of conducting a state function, which could have been accomplished by an existing state board or office, and which is governed in its debt features by sections 23 and 25 of art. 10 of the Constitution.

As to state agencies and instrumentalities, the special fund doctrine has been adopted in this state by the case of Baker v. Carter (1933) 165 Okla. 116, 25 P. (2d) 747, and

has been thoroughly discussed and limited and defined in its application in the recent case of Boswell v. State, 181 Okla. 435, 74 P.2d 940. From those two cases it has become an established rule that the special fund doctrine may be invoked in a restricted sense in this state as an exception to the debt limitation provisions of sections 23 and 25 of art. 10 of the Constitution. The act in question falls squarely within the special fund doctrine as established in Baker v. Carter, supra. The project is purely self-liquidating. The act does not pledge any existing revenues of the state or of the Authority, and does not pledge any revenues derived from taxation, either on an ad valorem basis or by special taxes. It is provided that "nothing in this act or in any other act or law contained, however, shall be construed as authorizing the district to levy or collect taxes or assessments, or to create any indebtedness payable out of taxes or assessments, or in any manner to pledge the credit of the state of Oklahoma or any subdivision thereof." In the event of the failure of revenues from the properties to be acquired by the district, the state is under no obligation to make up the loss.

The amici curiae contend, however, that the special fund doctrine as heretofore announced can have no application to the instant case for the reason that the act pledges the revenues of the state indirectly or contingently, on the theory that the state will be coerced into stepping in if and when the project fails, and resort to taxation to save a valuable investment. The authority cited in support of this proposition is Boykin v. Town of River Junction (1935, Fla.) 164 So. 558, and Kathleen Citrus Land Co. v. City of Lakeland (1936, Fla.) 169 So. 356. Those cases involved the extension and enlargement of an existing plant, and a pledging of the revenues of the entire system, and held, contrary to the previous case of State ex rel. Diver v. City of Miami (Fla.) 152 So. 6, that a contingent or indirect liability was incurred in violation of their constitutional debt limitation provisions. It was apparently to distinguish the former case that the theory of coercion, relied on here, was invoked, and with the exception of State v. City of Miami (discussed in Boswell v. State, supra) the special fund doctrine is, in effect, rejected in its entirety. We cannot adhere to such theory in the instant case, for to do so would in reality negative the application of the special fund doctrine in its entirety. If, in fact, there is an indirect or contingent pledge of the revenues of the state, the doctrine is not appropriate, but the coercion anticipated in the brief of the amici curiae is based upon mere speculation, and the resort to taxation is not indirectly or contingently contemplated by the act. On the other hand, such theory is negatived by the provisions clearly establishing legal liability only against the special fund. Under the rules announced in Baker v. Carter, supra, and Boswell v. State, supra, the act does not violate the debt limitation provisions of sections 23 and 25 of art. 10 of the state Constitution. As section 26 of art. 10 is not applicable, it is unnecessary to pass upon the contention of amici curiae that a different rule as to the special fund doctrine applies under section 26.

3. The remaining constitutional objections are not seriously urged. Plaintiff admits "that his objection No. 7 is not well taken." In this objection he attacks the constitutionality of the act as violating sections 34 and 35 of art. 5, dealing with the reading and passage of bills. We have examined the act and records in the office of the Secretary of State and amendment thereto in the light of this objection, and conclude that it is without merit. See Coyle v. Smith, supra.

4. Plaintiff also waives his objection No. 9, attacking the act as violating section 50 of art. 5 for the reason that it purports to exempt property from taxation, and says: "It is the belief of the plaintiff that the property exempt from taxation by reason of this act, to wit, the bonds, is such property as can be exempt from taxation without violating this constitutional provision for the reason that such bonds are instrumentalities of government." With this conclusion we agree. In re Assessment of First Nat. Bank of Chickasha, 58 Okla. 508, 160 P. 469.

5. The remaining objections are based upon the following constitutional provisions: (1) Section 31 of art. 2, referring to the right of the state to engage in business; (2) section 32 of art. 2, prohibiting monopolies; (3) section 5 of art. 5, reserving the powers of initiative and referendum to the legal voters of "every county and district therein," as to **local** legislation; (4) section 3 of art. 16, granting power to the Legislature to provide for a system of levees, drains and ditches; (5) section 1 of art. 18, dealing with the creation of municipal corporations; and (6) section 4 (a) of art. 18, reserving the powers of initiative and referendum to the people of every "municipal corporation." The views herein expressed dis-

pose of the objections regarding section 31, art. 2; section 5, art. 5; and section 3, art. 16. The Grand River Dam Authority is not a "municipal corporation" within the meaning of sections 1 and 4 (a) of art. 18, and does not violate the provisions thereof. We hold that the act does not create a monopoly in violation of section 32 of art. 2, in that nothing in the act excludes the operation of like businesses.

The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, GIBSON, and DAVISON, JJ., concur. WELCH, J., concurs in the conclusion. PHELPS and CORN, JJ., dissent.

PHELPS, J. (dissenting). I cannot concur in the majority opinion wherein it reaches the conclusion that the act under consideration is a general law. In my judgment it violates both sections 32 and 59 of article 5 of the Constitution. Section 32 reads as follows:

"No special or local law shall be considered by the Legislature until notice of the intended introduction of such bill or bills shall first have been published for four consecutive weeks in some weekly newspaper published or of general circulation in the city or county affected by such law, stating in substance the contents thereof, and verified proof of such publication filed with the Secretary of State."

Section 59 reads as follows:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

In the first paragraph of the syllabus of the majority opinion it is stated that the act under consideration "is not special and local, but is general legislation," and paragraph 2 of the syllabus correctly defines the meaning of "general law," but my objection to it is that the act under consideration does not come within that definition. In School District No. 85 v. School District No. 71, 135 Okla. 270, 276 P. 186, in the 4th paragraph of the syllabus, we said:

"Local or special laws are all those that rest on a false or deficient classification. Their vice is that they do not embrace all the class that they naturally embrace. They create preference and establish inequality. They apply to persons, things, and places possessed of certain qualities or situations and exclude from their effect other persons, things, or places which are not dissimilar in this respect."

Many authorities are cited and discussed in this opinion and counsel cite many others

in which we have discussed at length and in detail the distinction between local or special and general laws and their relation to the above-quoted sections of the Constitution. Some of these authorities are as follows: Territory v. Okla. County School Dist. 83, 10 Okla. 556, 64 P. 241; Diehl v. Crump, 72 Okla. 108, 179 P. 4; Board of Com'rs, Grady Co., v. Hammerly, 85 Okla. 53, 204 P. 445; Bradford v. Cole, 95 Okla. 35, 217 P. 470; Levine v. Allen, 96 Okla. 252, 221 P. 771; Simpson v. Butts, 99 Okla. 168, 226 P. 332; City of Sapulpa v. Land. 101 Okla. 22, 223 P. 640, 35 A. L. R. 872; Key v. Donnell, 107 Okla. 157, 231 P. 546; C., R. I. & P. Ry. Co. v. Carroll, Brough, Robinson & Humphrey, 114 Okla. 193, 245 P. 649; Holland v. Ownbey, 121 Okla. 102, 247 P. 1106; White v. Infield, 122 Okla. 4, 250 P. 81; School Dist. No. 85 Kay Co., v. School Dist. No. 71, Kay County, 135 Okla. 270, 276 P. 186; School Dist. No. 4, Garfield County, v. Independent School Dist. No. 4½, Garfield County, 153 Okla. 172, 4 P. (2d) 1031; Welch v. Holland, 177 Okla. 585, 61 P. (2d) 559.

As I view it the act in question violates article 5, section 59 of the Constitution last above quoted, and in this connection I call attention to the fact that before this act was passed there was in effect in this state a comprehensive "Conservancy Act" as applied to waters and water courses (article 5 of chapter 70, O. S. 1931, and amendments). Under this act section 13249, O. S. 1931, provides a specific method of establishing districts to perform practically the identical functions to be performed by the act under consideration, and this general law is available to the people in all districts. sections, and parts of the state alike, enabling them to do almost, if not all, the things that may be done under the provisions of the act in question.

Then, as we have a general law covering this subject, I can reach no other conclusion than that article 5, section 59 of the Constitution has been violated by the enactment of this law which applies to only a restricted district or a part of the state, and since it applies to only a restricted district and the benefits to be derived therefrom are available only to the residents of the district, I cannot follow the reasoning of the majority opinion when it declares that it is a general law.

As evidence that the act in question is a local or special law I call attention that it provides rights and benefits to the people living within the district that are not conferred or enjoyed by other citizens of the state living outside the district. For instance,

the nine directors must be resident freeholders of **the district and must have resided therein for at least five years.** The Authority may store the waters of Grand River Dam and its tributaries **"within the boundaries of the district,"** it may **"sell the same within the boundaries of the district,"** and it may **"develop and generate water power and electric energy within the boundaries of the district."** It will thus be seen that the citizen residing—for instance—in Creek county is eligible for appointment to the board of directors, while his neighbor, living only a few hundred feet across the section line in Okfuskee county, is denied that privilege. Or a citizen living in McIntosh county may buy the water for irrigation purposes, a privilege denied his neighbor living across on the other side of the section line in Pittsburg county. If this were a general law, as the majority opinion states, then under its provisions a group of counties along the watershed of the North Canadian river might form a district to do the same things that are to be done by the Grand River Dam Authority, or a group of counties along the Washita, or a group of counties along the Cimarron, might enjoy the benefits of this law, but does anyone contend that the counties within the watersheds of those rivers could avail themselves of this law and obtain the same benefits and privileges as are conferred upon the citizens of those counties within the Grand River Dam Authority? The answer is obvious. If the people residing in the counties within these watersheds desire to do the same things that are to be done in the Grand River Dam Authority district, they must do so under the general law of the state, as provided in chapter 70 of article 5, O. S. 1931, and amendments. Then if other districts or localities cannot avail themselves of the rights and privileges conferred by the act under consideration, how can it be said that it is a general law? If the Legislature has the authority to pass this law specifically naming the 17 counties of the state to be embraced in the district and excluding the other 60 counties from its operations and benefits, it follows that it would have the same authority to single out and name one county and authorize it to be embraced in a similar district. If the Legislature should pass an act in the verbatim language of this act authorizing—for instance—Tulsa county alone within the Arkansas river watershed to do all things to be done by the 17 counties embraced in this district, making no mention of any other county or counties of the state, and permitting no other part of the state except Tulsa

county to avail itself of the benefits of this act, would anyone say that it was a general law?

Therefore, my conclusion is that the Legislature was without authority to pass the act in question as a special law for the reason that the general law could have been made applicable, and if it attempted to pass the measure as a special law, it is invalid for the want of the published notice provided for in the Constitution.

Neither can I agree with the second proposition discussed in the majority opinion. As I view it, the act in question clearly and unmistakably is violative of section 26, article 10 of the Constitution, which provides that:

"No county, city, town, township, school district, **or other political corporation** or subdivision of the state, shall be allowed to become indebted in any manner, or for any purpose, to an amount exceeding in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose. * * *"

In Zachary v. City of Wagoner, 146 Okla. 268, 292 P. 345, in the 3rd syllabus we said:

"The fact that an indebtedness incurred by a municipality is to be paid only from some source other than ad valorem taxation does not render inoperative the limitation contained in section 26, article 10 of the Constitution, or extend the grant of authority contained in section 27, article 10, of the Constitution."

And in emphasizing the construction to be placed on this proposition of the Constitution, in the body of the opinion, we said:

"We are not unmindful of the rule followed in some jurisdictions that the purchase of property does not create an indebtedness if the purchase price is to be paid out of the income therefrom (Winston v. City of Spokane, 12 Wash. 524, 41 P. 888; Faulkner v. City of Seattle, 19 Wash. 320, 53 P. 365; Joliet v. Alexander, 194 Ill. 457, 62 N. E. 861; East Moline v. Pope, 224 Ill. 386, 79 N. E. 587, and other cases), **but we cannot follow such holding.** In our opinion, this is but another attempt to nullify and evade the wholesome constitutional limitations upon the power of municipalities to create indebtedness and to usurp powers never intended to be granted to municipal officers. **The reasoning in support thereof is the ingenious argument by which such attempts have ever been supported.** Under the decisions of this court and the Constitution and laws of Oklahoma, the agreement to pay for the material purchased **creates an indebtedness no matter from what source the funds are to be derived from which the**

**payment is to be made.** Sections 26 and 27, article 10, supra, contain nothing that limits their application to indebtedness to be paid from funds derived from ad valorem tax levy. They are general in their terms and **they will be applied to this court to all manner of indebtedness, no matter how created or from what source the indebtedness is to be paid.** * * *

"That section is placed in our Constitution for a distinct purpose. This court will not destroy the effect of that section by saying that municipal officers may evade its force by purchasing equipment for a public utility to be paid for out of the saving to the municipality from the use of the equipment so purchased."

The construction thus placed upon this provision of the Constitution was followed with approval in City of Tecumseh v. Butler, 148 Okla. 151, 298 P. 256, wherein we said:

"The debt creation that is set out in this case, as it appears to us, is forbidden by sections 26 and 27 of article 10 of the state Constitution, and this feature of a similar contract has heretofore, in an opinion by this court in the case of Zachary v. City of Wagoner, 146 Okla. 268, 292 P. 345, been considered, and it was there held that the scheme here set out would violate those sections of that article."

This same question was again before us in the recent case of Boswell v. State, 181 Okla. 435, 74 P.2d 940, and we cited, relied upon, and emphasized the rule announced in the two cases last above cited. In that opinion we said:

"The special fund doctrine was specifically rejected by this court in the case of Zachary v. City of Wagoner. * * * We have not departed from the principles there enunciated. See Layne-Western Co. v. City of Depew, 177 Okla. 338, 59 P. (2d) 269."

I dissented to that opinion because the opinion attempted to follow the rule laid down in Zachary v. City of Wagoner and Tecumseh v. Butler, supra, **without overruling** the case of Baker v. Carter, 165 Okla. 116, 25 P. 2d. 747, in which we had departed from, and in effect overruled, the rule announced in Zachary v. City of Wagoner and Tecumseh v. Butler, and it appeared to me that we were getting our decisions in such hopeless conflict on this subject that the trial courts and the legal profession would have difficulty in determining just what course we were following. But when the opinion was promulgated I considered it, in true effect, overruled what we had said in Baker v. Carter, supra, despite the attempted distinction, and that the rule announced in Zachary v. City of Wagoner, Tecumseh v. Butler, and Boswell v. State,

would hereafter be the law of this state, but the majority opinion in the instant case adds still more confusion by attempting to recognize and follow the rule in Baker v. Carter, supra. Thus we have Zachary v. City of Wagoner, Tecumseh v. Butler, and Boswell v. State, specifically and definitely repudiating the "special fund doctrine;" and we have Baker v. Carter and the instant opinion specifically recognizing the "special fund doctrine," and I cannot sanction a course that leads us into such a hopeless morass of doubt and confusion as to what the law is in this state on that subject.

Neither can I follow the logic or reasoning of the majority opinion wherein it states:

"The act does not create a political corporation or subdivision of the state within the meaning of section 26 of article 10."

The language of the Constitution is (sec. 26, art. 10):

"No county, city, town, township, school district, **or other political corporation,** or subdivision of the state. * * *"

The language of the act in question is as follows:

"Such district shall be, and is hereby, declared to be a governmental agency and body **politic** and **corporate,** with powers of government and with the authority to exercise the rights, privileges, and functions hereinafter specified. * * *"

Section 9719, O. S. 1931, provides that:

"Corporations are either:

"First. Public; or,

"Second. Private."

And section 9720, O. S. 1931, states:

"Public corporations are formed or organized for the government of a portion of the state. * * *"

6 Words and Phrases (First Series) p. 5444, says:

"A political corporation is one which has principally for its object the administration of government, or to which the powers of government, or a part of such powers, have been delegated. It does not depend upon the magnitude or variety of the subjects over which power is granted by the Legislature, nor does its character as a political corporation depend on how much of the authority vested in the corporation is exercised directly by the people, and how much through a committee or commission. Auryansen v. Hackensack Imp. Commission, 45 N. J. Law (16 Vroom) 113, 115.

"A political corporation is a public cor-

poration created by the government for political purpose, and having subordinate and local powers of legislation. It is synonymous with municipal or public corporation. Curry v. District Tp. of Sioux City, 17 N. W. 191, 192, 62 Iowa, 102 (cited in Cook v. Port of Portland, 27 P. 263, 264, 20 Ore. 580, 13 L. R. A. 533).

"The term 'political corporation' is synonymous with the term 'municipal corporations' or 'public corporations.' It is often used to signify a community clothed with extensive civil authority. Winspear v. Holman Dist. Tp., 37 Iowa, 542, 544."

Under the head of "Political Corporations," Ballentine's Law Dictionary, at page 981, says:

"A public corporation is one that is created for political purposes, with political powers, to be exercised for purposes connected with the public good, in the administration of civil government; an instrument of the government, subject to the control of the Legislature and its members, officers of the government, for the administration or discharge of public duties, as the cases of cities, towns, etc. 'Public corporations are synonymous with municipal or political corporations.' (6 Words and Phrases, p. 5781.) Public corporations, commonly called municipal corporations, are not associations, but subdivisions of the state. See Phillips v. Mayor and City Council of Baltimore, 110 Md. 431, 25 L. R. A. (N. S.) 711, 715, 72 Atl. Rep. 902."

Pope's Legal Definitions, vol. 2, p. 1196, says:

"A political corporation is one which has principally for its object the administration of the government, or to which the powers of government or a part of such powers have been delegated."

In concluding that the Grand River Dam Authority is not such a corporation as contemplated by the above-quoted section of the Constitution the opinion says:

"The people have no voice in the management or government of the Authority, and no power of taxation has been conferred as in the case of counties, cities, towns, townships and school districts. The Authority was not organized for political or governmental purposes and does not possess political or governmental powers other than necessary to carry out the specific purposes for which it was created."

My attention has not been called to any authority holding that in order for an agency of the state to be a political corporation it must be governed and managed directly by the people themselves instead of by a board of directors as under this act. Neither has my attention been called to any authority holding that the power of taxa

tion must be conferred in order to bring the agency within the term 'political corporation," and I call attention to the fact that the only political or governmental powers that a township or school district, or any other subdivision of the state, has, is only that power necessary to carry out the purposes for which it was created.

Then, to summarize: I can arrive at no other conclusion than that the act under consideration is, under the weight of authority, a special law and its enactment violates the specific provisions of the Constitution.

The majority opinion attempts to uphold the prior decisions of this court both approving and repudiating the "special fund doctrine" with an analysis which, to my mind, is far from satisfactory in both logic and conclusion; and finally concludes that the Grand River Dam Authority does not create such a political corporation as contemplated by section 26, article 10, of the Constitution, which conclusion I believe to be fundamentally erroneous.

Considering this to be a worthy, meritorious, and valuable project for the state, yet this does not justify us in departing from fundamental rules of law and the plain provisions of our Constitution in order to further its consummation.

To the end that the decisions of this court may be in harmony in upholding section 26, article 10, of the Constitution, we should adhere to the wholesome and salutary rules laid down in Zachary v. City of Wagoner, Tecumseh v. Butler, and Boswell v. State, and refuse to further follow the rule announced in Baker v. Carter. The Constitution itself makes ample provision for the passage of special laws such as I consider this to be, and also provides a method by which municipalities may incur indebtedness. These provisions are not unreasonable and I conceive it to be our duty to preserve the integrity of the Constitution by refusing to sanction such evasive procedure.

I therefore most respectfully dissent.

CORN, J. (dissenting). In support of the contention that the Act of 1935, as amended by the Act of 1937, is a general law, although it creates a conservation and reclamation district limited to a particular part of the state, and in a manner different from that provided by the general statute relating to the creation of conservation and reclamation districts, and with powers, rights, and privileges limited to property and persons within a designated area of the state,

the majority opinion relies on the decisions of this court which have upheld the validity of acts establishing superior courts in various counties of the state. The first is Burks v. Walker, 25 Okla. 353, 109 P. 544, in which superior courts were established in all counties having a population in excess of 30,000 and a city of 8,000 population. The court held that that statute had uniform operation throughout the state, as the classification was not arbitrary and capricious. That case and similar cases have no application here because the act under consideration does not attempt to make any classification applicable to the state as a whole. However, in Leatherock v. Lawter, 45 Okla. 720, 147 P. 324, and Diehl v. Crump, 72 Okla. 108, 179 P. 4, this court held that an act establishing a superior court in only one county was valid, and that the act was not special or local. That holding was based on the fact that the court, although located in only one county, was a court created under specific authority of the Constitution and exercising jurisdiction on all the citizens of the state coming within its jurisdiction; that it was a court for all the people of the state, not limited to any particular area of the state, and that the litigation of all persons coming before that court would be determined pursuant to general laws applicable to all state courts. The reasoning in that case in my judgment is unsound, and while the facts are clearly distinguishable from the facts in this case, it is the foundation upon which the majority opinion is based.

This court in the case of Coyle v. Smith, 28 Okla. 121, 113 P. 944, held that an act locating the capital of the state at Oklahoma City was a general law. The court held that a publication of notice of the consideration of the act was unnecessary, as the act was not a special law, and said:

"This notice was required to be published where laws applying solely to particular individuals, or to any particular locality, were sought to be passed for the benefit or prejudice of such locality, in order that they might have an opportunity to appear before the Legislature and remonstrate against the passage of such law if they did not think it was wise. But when such law applies to every part of the state, locating the capital for the entire state, the very fact that it locates it at a particular spot does not make it a special law."

Manifestly, the capital of the state is a capital of all the people of the state, and the place of its location does not make it the capital of that particular place. The act was for the use of the entire state, and not merely for the locality where the building,

the Capitol, was located; the beneficiary is the people of the entire state.

In considering the validity of the act creating the Grand River Dam Authority, it is necessary to first consider the 1935 Act without regard to the 1937 amendments. If that act was a special and local law, and for that reason was void, the 1937 amendments could not give life to that part of the act which was not re-enacted by the Legislature of 1937.

Section 57, art 5, of the Constitution provides:

"No law shall be revived, amended or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length."

As the Act of 1937 only purports to amend section 1 of the 1935 Act and does not re-enact at length the remainder of the act, none of the 1935 Act can be aided by the 1937 amendment except section 1. In support of the contention that the act under consideration is a general law, stress has been laid on the testimony of Engineer Holloway to the effect that the water impounded under the act would be sufficient to furnish electric power to all parts of the state at a cost less than the present rates. From that testimony it is argued that the project is one in which all of the people of the state have an interest, and that the law creating the project is, therefore, a general law. The rights, powers, and privileges conferred by the 1935 Act were limited to the district and to the watershed area of the Grand river and its tributaries, and those rights, powers, and privileges were not extended to the remainder of the state. Under that act the district which was created consisted of 17 counties, and in the first paragraph it was provided:

"Nothing in this act shall be construed as authorizing the district, and it shall not be authorized to build distributing lines or to engage in the retail marketing of the hydroelectric power developed. Provided, further, that the hydroelectric power can be sold at the turbines for wholesale purposes only, and then only to distributing concerns; provided, that no such concern shall be connected, in any way, with or controlled or owned by the district."

That paragraph was eliminated by the 1937 amendment, but in determining whether the 1935 Act was a general law, we must give effect to that section in addition to the powers, rights, and privileges expressed in section 2 of the act. Under subdivision (a), power was granted:

"To control, store and preserve, **within the boundaries of the district,** the water of the **Grand river and its tributaries** for any useful purpose, and to use, distribute and sell the same **within the boundaries of the district."**

The power to sell water for irrigation or other purposes was thereby **limited to the district.**

In subsection (b), power was granted:

"To develop and generate water power and electric energy **within the boundaries of the district."**

In subsection (c), power was granted:

"To prevent or aid in the prevention of damage to person or property from the waters of the **Grand river and its tributaries."**

Flood prevention and erosion were thereby limited to the **watershed area of the Grand river and its tributaries,** and the same is true as to subsection (d), which provides:

"To forest and reforest and to aid in the foresting and reforesting of the **watershed area of the Grand river and its tributaries,** and to aid in the prevention of soil erosion and floods **within said watershed area."**

Under subsection (e) the district is granted the powers:

"To acquire by purchase, lease, gift or in any other manner, and to maintain, use and operate any and all property of any kind, real, personal or mixed, or any interest therein, within or without the boundaries of the district, necessary or convenient to the exercise of the powers, rights, privileges and functions conferred upon it by this act."

Under subsection (f) it was granted the power to acquire similar property by condemnation proceedings. The last two subsections are, by their express terms, limited to property acquired and used in exercising the powers conferred by the preceding subdivisions, which are in turn limited to the **district** and to the **watershed area of Grand river and its tributaries.**

The last paragraph of section 2 is as follows:

"Provided, however, that in the course of exercising its powers as herein enumerated, the said district shall at all times consider the rights and needs of the people living within and upon the land lying within the **watershed of the Grand river and its tributaries** above the **district,** provided, however, that nothing herein shall prevent the district from selling for irrigation purposes **within the boundaries of the district** any

water impounded by it under authority of law."

From the above it is very clear that the use, distribution, and sale of the impounded water for either domestic or irrigation purposes is limited to the boundaries of the district, and not even those people outside of the district, but within the watershed area of the Grand river and its tributaries, are entitled to fully participate therein; that the development and generation of water power and electrical energy is limited to the boundaries of the district, and the distribution and sale of electrical power is limited to the boundaries of the district and is further limited to sales to distributing companies; the foresting and reforesting and prevention of soil erosion and floods is limited to the watershed area of the Grand river and its tributaries. The law is local and special in that a conservation and reclamation district is attempted to be created under a law applicable to only 17 counties of the 77 counties of the state. It is local and special because the powers, rights, and privileges granted by the act are specifically limited to that area and no provisions were made in the act whereby the people of the state, either as a whole or by classes based upon valuation, population, or in any other manner, might secure the rights and privileges granted and conferred.

It is contended that section 15 of the act, which provides:

"The district shall not prevent free public use of its lands for recreation purposes and for hunting and fishing except at such points where, in the opinion of the directors, such use would interfere with the proper conduct of the business. All public rights of way now traversing the areas to be flooded by the impounded waters shall remain open as a free public passage to and from the lakes created, and no charge shall ever be made to the public for the right to engage in hunting, fishing, boating or swimming thereon"

—is a privilege extended to all the people of the state and is sufficient to make the act a general law. There is nothing in the title of the act specifying that the district was created for a recreational center, or that the use of the property of the district for recreational purposes was among the powers, rights, and privileges conferred by the act. Section 1 of the act states that the district was created as "a conservation and reclamation district," and that such district should exercise the rights, privileges, and functions specified. A specification of those powers, rights, and privileges is found in section 2. No mention of a state hunt-

ing. fishing, boating, and swimming resort is found in that section. The district was granted the powers, rights, and privileges mentioned in section 2, and only as and when those powers shall have been exercised and the large volume of impounded water shall have come into existence, will the people of the state have the privilege of using the same for hunting, fishing, etc. A law authorizing the creation of a conservation and reclamation district applicable only to 17 of the 77 counties of the state, and granting powers, rights, and privileges which are limited to those counties, cannot be said to be a general law because the people of the remaining 60 counties may receive some incidental benefit from the project. Some meaning must be given to section 59 of art. 5 of the Constitution, which requires that laws of a general nature shall have a uniform operation throughout the state. Certainly a law authorizing the creation of a reclamation and conservation district in a manner different from that authorized for the creation of such districts in the remainder of the state, and which provides that use, sale, and distribution of the water, water power, and electric energy, the foresting and reforesting, and the prevention of soil erosion and floods, shall be limited to the district and to the watershed of the Grand river and its tributaries, does not operate uniformly throughout the state merely because there is a provision in the law that the district shall not prevent the free public use of its lands for recreation purposes and for hunting and fishing, except at such points where, in the opinion of the directors, such use would interfere with the proper conduct of the business.

It further appears that the board of directors of this district, who must be appointed from the district, has the power to determine what portion of the property of the district can be used for recreational purposes without interfering with the proper conduct of the business. That control is entirely different from that provided in the general conservation laws of the state, as amended by article 17, chap. 24, of the Laws of 1937, which places all state parks and state lakes under the administration of the State Planning and Resources Board.

A law creating a private corporation with power to construct and operate a hydroelectric plant, and providing that all the people of the state should have the privilege of using the lands and waters of the corporation for recreation, hunting. and fishing, without any charge or fee being exacted for the exercise of the privilege, would be a special law notwithstanding the proviso.

Likewise the creation of conservation and reclamation district under a law applicable only to a particular area of the state without any classification, granting rights, privileges, and powers not uniformly operative throughout the state, is a special and local law.

No attempt was made by the Legislature to frame this act so that all parts of the state might come within its operation. No attempt was made by population, valuation, or any other manner to create a class on which the act might operate uniformly throughout the state. By its express terms, it was restricted to a particular locality within the state. House Bill 3 of the 1937 Legislature, which purports to have amended section 1 of the 1935 Act, cut down the number of counties embraced in the district, and excluded from the operation of the act the counties of Rogers, Osage, and Washington, therefore leaving 14 counties of the 17 composing the district.

The following decisions of this court conclusively establish in my mind that the act under consideration is special and local:

In School District No. 85 v. School District No. 71, 135 Okla. 270, 216 P. 186, the court had under consideration section 10607, C. O. S. 1921, which authorized the excise board to arbitrarily include an item for transfer fees in the estimate of a school district. At the time of the enactment of that statute, there was a general law relating to the duty of making estimates of the needs of the school district. The court held that section 10607 was a special law and was void because of lack of compliance with section 32 of art. 5 of the Constitution, and that the act was also violative of section 59 of art. 5 of the Constitution, as the act was special and not uniform in its operation. when a general law could be made applicable. The court said:

"Special laws are those made for individual cases, or for less than a class requiring laws to its peculiar conditions and circumstances. * * *

"Special laws are not all local, but all local laws are special. * * *"

In Hudgins v. Foster, 131 Okla. 90, 267 P. 645, it was held that the law of 1927, abolishing township officers in 49 counties of the state and retaining them in 28 counties without regard to any classification thereof, was violative of the uniformity clause of the Constitution.

In that case it was said:

"The people, by their action, have adopted constitutional checks against the passage of certain legislation. This limitation is de-

signed to prevent inequality, and these con-stitutional checks cannot be destroyed through hasty or ill-considered legislation. One of the most vital constitutional checks is against legislation of a general nature, which is not uniform in its operation throughout the state. If such legislation were permitted, it can be readily seen that it may become an instrument of oppression in one portion of the state and bestow favor-itism on another part. This possibility has been checked by the basic law of this state.

"In our judgment, the act here in consider-ation clearly falls within the constitutional inhibition as hereinbefore pointed out. We are mindful that the result in so holding may prove of some inconvenience, but this inconvenience can be removed under appro-priate action by the several counties as con-tained in section 5a of article 5 of the Con-stitution, supra, but whatever inconvenience may arise cannot approach the danger that may arise in the future, if we should hold that the act in question is constitutional."

The case of Board of Directors of Har-per Township v. Board of Com'rs, 134 Okla. 118, 272 P. 374, wherein the writer of this opinion represented the plaintiff in error, is to the same effect.

In Roberts v. Ledgerwood, 134 Okla. 152, 272 P. 448, the court held that the law of 1927, abolishing township officers in cer-tain counties of the state, violated the uni-formity clause of the Constitution. In that case Craig and Mayes counties were the only counties affected by the act.

In the following cases the court held that acts fixing salaries of officers in certain counties of the state or taking certain coun-ties out of the salary limitations provided by the general law violated this section of the Constitution: In re Bucher, 162 Okla. 168, 20 P. (2d) 150; In re Protest of C., R. I. & P. R. Co., 164 Okla. 72, 22 P. (2d) 1002; Baker v. Braden, 165 Okla. 12, 24 P. (2d) 293; Robinson v. Bd. Com'rs, Marshall Coun-ty, 151 Okla. 100, 1 P. (2d) 660; Madden v. Excise Board of Harmon County, 160 Okla. 170, 16 P. (2d) 259; Caddo County v. C., R. I. & P. R. Co., 155 Okla. 32, 7 P. (2d) 900.

In Diehl v. Crump, 72 Okla. 108, 179 P. 4, it was held that a law applicable to Ok-fuskee county alone, providing a method for disqualifying district judges, is different from the general law, and violative of this section of the Constitution.

In White v. Infield, 122 Okla. 4, 250 P. 81, it was held that an act extending the term of office of the county assessor of Ellis county for a term of two years was violative of section 59, art. 5.

In City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640, it was held that a charter pro-vision of the city of Sapulpa providing a method of foreclosure of special assessment liens effective only in the city of Sapulpa was violative of the above provision of the Constitution.

In Key v. Donnell, 107 Okla. 157, 231 P. 546, it was held that an act reducing the number of justices of the peace and fixing salaries and jurisdiction which was appli-cable only to Oklahoma City was void.

In Welch v. Holland, 177 Okla. 585, 61 P. (2d) 559, it was held that a statute providing a method for the nomination of candidates for county commissioners operative only in Creek county was void.

Up to this point I have been considering the act with relationship to its general pur-poses. I shall now briefly point out the various other provisions of the act which except this district from the operation of the general laws of the state, and in rela-tion to which general laws can clearly be made applicable, to wit:

(1) The act provides a method for the selection of a board of directors which is special to that district.

(2) The act provides for the establish-ment of rates, charges, and fees applicable only to that district, and which could be easily covered by a general law. The act provides for the issuance of so-called rev-enue bonds which have no application to any other reclamation and conservation dis-trict which can be formed in this state, or to any project of a public nature in the state. By this act the property owners in the dis-trict, and who will receive the primary bene-fits from the project, will not have their property subjected to special assessments in accordance with the benefits derived; the district will not be required to issue ordinary bonds, but is permitted to issue so-called revenue bonds. Manifestly, every district created under the general conservation and reclamation act of the state of Oklahoma, and desirous of impounding large quantities of water, could be granted a like privilege for financing the project, but the act limits that privilege to this one district. By this special act this particular district will be able to obtain for its use and benefit a large body of impounded water and the benefits accruing from reclamation, irrigation, flood control, and reforestation with the federal government purchasing the bonds subject to reimbursement out of the proceeds of the enterprise. Any other portion of the state attempting a project of this kind must either raise funds on ordinary bonds or subject the

property benefited by the project to special assessments.

(3) This act specifically prohibits the levying or collection of any taxes or assessments or creating any indebtedness payable out of taxes or assessments, and no such privilege is accorded any other portion of the state.

(4) This act authorizes the district officers to locate and relocate roads and highways of the state, whereas, under the general laws of the state, that power rests with state and county officials.

(5) This act authorizes the appointment of a receiver in the event of default on the bonds, which is a grant of particular privilege to this district not included in the general laws authorizing the appointment of receivers.

(6) This act vests the absolute governmental authority of the district in the board of directors contrary to the general law which reserves the power of the initiative and referendum to the people of the district.

° In each and all of the above matters, there is no sound reason for the adoption of a law not having uniform operation throughout the state, nor for attempting to exempt this district from the operation of the general laws of the state.

There is a well-defined distinction between special or local laws and general laws.

25 R. C. L. 813, is as follows:

"* * * The phrase 'local law' means, primarily at least, a law that in fact, if not in form, is directed only to a specific spot. A local act is confined in its operation to the property and persons of a limited portion of the state. It touches but a portion of its territory, a part of its people, or a fraction of the property of its citizens. A commonly accepted definition of a general law is distinguished from a special or local. in that it is a law that embraces a class of subjects, or places and does not omit any subject or place naturally belonging to such class. According to the definition incorporated in the Constitution of some states a general law which applies to the whole state, a local law is a law which applies to any political subdivision or subdivisions of the state less than the whole, and a special or private law is one which applies to an individual, association or corporation. A general law as the term is thus used is held to be a law which operates throughout the state, alike upon all the people or all ·of a class. Any law affecting the public within the limits of the county or community would be a public law, though not a general law within the meaning of the Constitution."

"A local law is one that applies to any subdivision or subdivisions of the state less than the whole." Volume 3 of Words and Phrases (Second Series) p. 172.

Budd v. Hancock (N. J. Law) 37 Vroom, 133:

"A law is special in a constitutional sense when by force of inherent limitation it arbitrarily separates some persons, places or things from others, upon which, but for such limitation, it would operate."

The courts of various states have from time to time had occasion to define local or special laws. In the case of King v. Commonwealth, 238 S. W. 375, a Kentucky case, the court defined the term "local law" as follows:

"A 'local law' is one whose operation is confined within territorial limits, other than those of a whole state or any properly constituted class or locality therein."

The same rule was followed by the Kentucky court in the case of Jefferson County v. Cole, 263 S. W. 1114.

In the case of Cotte v. Gilbert, 175 N. Y. S. 148, the court defined a local act as being, "An act operating upon persons or property in a single city or county or in two or three counties, would be local."

In the case of State v. Daniel, a Florida case, 99 So. 804:

"The statute relating to particular subdivisions or portions of the state or to particular places of classified localities is a local law."

In the case of State v. Johnson, 86 S. E. 788, a North Carolina case, that court said:

"A law is local when it pertains to a particular place or to a definite region or portion of space or is restricted to one place."

The Supreme Court of Florida, in the case of State ex rel. Buford, Atty. Gen., v. Daniel, 99 So. 804, said:

"A statute relating to particular subdivisions or portions of the state or to particular places of classified localities is a local law."

In some jurisdictions in deciding whether or not any given statute is local or general it seems to have made little difference how extensive the operations of the statute so long as it failed to operate upon the people of the entire state.

In the case of Webb et al. v. Adams (Ark.) 23 S. W. (2d) 617, the court had under consideration an act of the Legislature which established a county unit system for the governing of schools and provided for ex-

cepting two counties from the operation of its provisions. The act was attacked on the ground that it was local, and upon a hearing the court held it to be unconstitutional. In the opinion the court used the following language:

"The courts look to the substance and practical operation of a law in determining whether it is general, special or local, and, if its operation must necessarily be special or local, it must be held to be special or local legislation whatever may be its form. * * * Impliedly, at least, this court has uniformly held that general laws shall have uniform operation throughout the territorial limits of the state; and there are many decisions to this effect as will be seen by the reasoning of the court in the cases heretofore decided relating to local or special laws. It has been uniformly held that the subject of legislation, in order to be a general law, must operate uniformly upon every person or thing of a designated class throughout the territorial limits of the state. * * * Now, if a general law must apply throughout the territorial limits of the state, the exclusion of one or more counties from its provision makes it a local statute. This is a common and well-known difference between general and local acts."

In the Constitutions of some of the states the framers thereof have seen fit to define general and special laws; Alabama is one of these states. Article 4, sec. 110, of the Constitution of Alabama 1901 is as follows:

"A general law within the meaning of this article is a law which applies to the whole state; a local law is a law which applies to any political subdivision or subdivisions of the state less than the whole; a special or private law within the meaning of this article is one which applies to an individual, association or corporation."

Although the makers of our Constitution did not see fit to define the meaning of the terms, I feel they had in mind the same definition as set out in the above section.

59 C. J. 728, defines a general law as follows:

"A general law within the intent of the constitutional provisions of the character under consideration is a law which affects all of the people of the state, or of all persons or things of a particular class, although the class must be legitimately constituted. * * * Where a law relates to a class, it must, in order to be regarded as a general law, be general in its application to the class; it must operate uniformly as to all the persons or subjects included, and all the class within like circumstances must come within its operation."

This definition is particularly important for the reason that in the case In re Annexation of Reno Quartermaster Depot Military Reservation to Independent School District No. 34, Canadian County, Okla., 180 Okla. 274, 69 P. (2d) 659, an opinion written by the writer of this opinion, this court cited the above definition with approval.

Assuming that the Grand River Dam project is a worthy one; that there existed a good and sufficient reason why that particular district should be created under a special act, with powers, rights, and privileges not conferred on other conservation and reclamation districts; that it is highly desirable that the district should be permitted to receive the benefit of the grant and loan from the federal Public Works Administration, those circumstances do not justify this court in destroying the plain provisions of sections 32, 46, and 59 of art. 5 of the Constitution in order to make the act legal.

The act is local legislation, for the reason it does not include the entire state, and the restricted counties included therein are not classified by valuation, population, or in any other manner. It only includes a definite part of the state.

Having reached this conclusion, I deem it unnecessary to discuss any of the other propositions of law involved in the majority opinion.

I, therefore, dissent.