Application of OKLAHOMA PLANNING and RESOURCES BOARD.

No. 33983.  March 1, 1949.

*203 P. 2d 415.*

179

Mac Q. Williamson, Atty. Gen., and Mainard Kennerly, Asst. Atty. Gen., for State of Oklahoma,

George J. Fagin, of Oklahoma City (T. R. Benedum, of Norman, of counsel), for applicant, Oklahoma Planning and Resources Board.

PER CURIAM. ·This is an application by the Oklahoma Planning and Resources Board for the approval of state park improvement bonds, which it proposes to issue for the making of improvements in Lake Murray State Park. The amount of bonds proposed to be issued is $850,000, maturing as to principal on January 1, 1979, but callable for redemption prior to maturity at the option of the Board on January 1, 1955, and on any interest payment date thereafter. The application for our approval is filed pursuant to authority given in section 17, ch. 12(a), Title 74, S. L. 1947, p. 611, 74 O. S. 1947 Supp. §356.17. Notice of the hearing of the application was duly published; no protests were filed nor objections made, and the matter came on for hearing on the written application, and the instruments attached thereto and made a part thereof.

Examination of the application and instruments submitted· shows that the proceedings for the issuance of the bonds are in substantial conformity with the provisions of the law, which was enacted for the purpose of enabling Oklahoma Planning and Resources Board to make improvements in the various state parks, and to pay the cost of such improvements out of the fees chargeable for their use, and the use of the various facilities of the parks, as provided in said Act. The Act has never before been passed upon by this court, and it appears that the prospective purchasers of the bonds have raised certain questions as to the constitutionality of the law, and also as to the plan of operation of the·development program as set out in the resolution of the Board authorizing the issuance of the bonds. We will consider these questions in the order in· which they appear in the application.

The first question presented is whether said bonds, if issued, constitute an indebtedness of the State of Oklahoma in violation of section 23, art. 10, of the Constitution, as amended and approved on March 11, 1941, and sections

24 and 25, art. 10 of the Constitution. These sections prohibit the contracting of debts against the state, and have been held to apply only to debts, obligations or deficits for the payment of which resort might properly be had to the taxing power of the state. Graham v. Childers, 114 Okla. 38, 241 P. 178. They do not prohibit the incurring of indebtedness payable only out of a special fund, which indebtedness is not, and cannot, become a debt of the state payable out of taxes levied by the state. The right of the Legislature to provide for the carrying out of self liquidating projects by state agencies has been upheld in numerous cases. Sheldon v. Grand River Dam Authority, 182 Okla. 24, 76 P. 2d 355; Baker v. Carter, 165 Okla. 116, 25 P. 2d 747; In re Application of Board of Regents, Agricultural & Mechanical Colleges, 196 Okla. 622, 167 P. 2d 883.

In the instant case the bonds expressly provide that they are payable solely from the revenues to be derived from the operation of Lake Murray State Park, and that they are not an indebtedness of the State of Oklahoma, or the Oklahoma Planning and Resources Board, within the meaning of any constitutional or statutory limitation. Our conclusion is that the bonds, if issued, will not be violative of the constitutional provisions above referred to.

The second question presented is whether a lease agreement entered into between the Board and one Alfred H. McCall is sufficient to satisfy the requirements of section 8, chapter 12 (a), supra. That section provides that prior to the issuance of a series of bonds for the erection of a resort, hotel, lodge or restaurant, the Board shall secure a lease "from competent and financially reliable individuals or corporations which will provide for a rental return on the property sufficient to meet the requirements of principal, interest, insurance and maintenance of the property to be constructed, and provided further that said lease shall be for a period of not less than five years".

The improvements contemplated by the Board are the erection of a central lodge and restaurant, and additional cabins. The lease agreement, a copy of which is submitted with the application, is for a term of ten years and leases the lodge and restaurant, but does not include the cabins. It grants the lessee the exclusive right to sell food and soft drinks in the park, including the operation of all restaurants, stores, vending machines, and other food and soft drink dispensing facilities, subject to such rules and regulations as are now in force or may be enacted by the Board. The lessee is to keep the premises in good state of repair, furnish all linens, silverware, cooking utensils and similar equipment necessary, furnish a surety bond in the amount of $5,000 conditioned upon his faithful performance of the lease obligations, and is obligated to pay as rental a specified percentage of the rentals of the accommodations in the lodge, and specified percentage of the proceeds of all sales made by him. The lease is for a term of ten years, expiring January 1, 1959, and the Board states that careful computation of the estimated receipts from the operation of the business, to be paid to the Board by the lessee, shows that the amount so received will be sufficient to meet the statutory requirements of principal, interest, insurance and maintenance of the improvements to be constructed. There is no requirement, and the law does not contemplate, that the revenue produced by the lease will be sufficient to retire all the bonds, but the requirement of the law is that the lease income inuring to the Board be sufficient to meet the obligations of principal, interest, insurance and maintenance during the term of the lease.

It is suggested that the lease will not be effective because executed at a time when the leased property is not in existence. Clearly the statute contemplated the execution of the lease prior to the building of the lodge and restaurant, and we are of opinion that the

fact that the lessee cannot take possession and begin operations prior to the completion of the leased property or buildings, does not invalidate the lease. Counsel for the Board points out that in Peoples v. Kelsey (N.Y.) 38 Barb. 269, such a lease was held valid, and state that they have found no authority to the contrary. We are of opinion that the lease agreement sufficiently satisfies the requirements of the statute.

The Board proposes, if necessary to the payment of the bonds, to created an improved area in the park which will embrace that portion of the park lying within one-half mile of the shore of Lake Murray, and in addition thereto any other portion or portions of the park on which may be located any improved facilities, and to impose and collect such general admission fees thereto as may be necessary to make the amount received by the Board from the operation of the park sufficient to retire the bonds and cover insurance, maintenance and other necessary expenses.

The third question presented is whether, under the statute, the Board is authorized to create this improved area and charge entrance fees thereto.

Section 8 of the Act provides that the Board may collect "reasonable rates, fees, tolls or charges for the services, facilities and commodities rendered by all property of the Board, the revenues of which have been pledged to the payment of bonds issued hereunder, . . . Provided that the Board shall not collect rates, fees, tolls or charges for use of highways, bridges, entrance to park sites or water ways".

The Board assures us that the creation of these improved areas does not include charges for use of highways or bridges, and does not prevent free entrance to the park site, or to any water ways in this particular park. A water way is defined as a channel through which water flows, 67 C. J. p. 1463, and in our decisions the term is synonymous with water course. Chicago,

R: I. & P. Ry. Co. v. Groves, 20 Okla. 101, 93 P. 755; Garrett v. Haworth, 183 Okla. 569, 83 P. 2d 822. Under these definitions the lake would not be a water way, but would be a facility of the park for the use of which a charge would not be prohibited by the act. We note that in the Act providing for the acquisition of the park, S. L. 1933, ch. 61, p. 112, the State Fish & Game Commission was authorized to charge an additional fee for hunting and fishing in the park in order to repay the expense of purchasing the park site. Evidently the Legislature, in enacting chapter 12 (a), supra, contemplated that improvements made under the provisions of that Act would constitute an improvement to the park as a whole, and authorized the Board, in making provision for the payment of the bonds, to fix reasonable fees for the use of any or all facilities or improvements in the park, except such as were specifically excepted in the proviso above set forth. We assume that the fees to be charged for admission into this improved area are to be fixed only in such amount as is absolutely necessary, and we think, if charging such fees should become necessary, the action of the Board in fixing and collecting them is not prohibited by the statute.

Question No. 4 is whether the Board resolution violates the provisions of section 23 (a), art. 10, of the Constitution, requiring all surplus general revenues of the state to go into the sinking fund to retire state bonds. In this connection we are furnished with a written statement by the Governor, State Treasurer, and Attorney General, certifying that sufficient money has been placed in the sinking fund to pay the outstanding bonded indebtedness of the state. From this it appears that the purpose of the constitutional provision has been served and that the resolution does not violate its provisions. That the Legislature could make the revenues derived from the park a special fund for the payment of the improvements is no longer open to ques-

tion. Edwards v. Childers, 102 Okla. 158, 228 P. 472.

The fifth and last question is whether the Act authorizing the bonds, and the Board resolution providing for their issuance, violate section 32, art. 6, of the Constitution, giving the Commissioners of the Land Office control over all state lands. We think this question is answered by our decision in Lund v. Nichols, 177 Okla. 65, 57 P. 2d 592, in which we held that real estate owned by the state which had been designated for use for some specific governmental purpose, and was so occupied and used, was not a part of the public lands of the state within the meaning of section 32, art. 6, supra.

We find nothing in this statute which renders it in any respect violative of our constitutional provisions. Not limiting our examination to the specific questions upon which we were requested to pass, we have carefully examined the statute and the proceedings relating to and connected with the issuance of the bonds, and are of the opinion that the Planning and Resources Board has proceeded in accordance with the provisions of the statute, and that the bonds when issued will be valid and payable in accordance with the provisions of the statute.

The bonds are approved. In conformity with the requirement of section 17 of the Act, giving us authority to pass upon the validity of the bonds, we fix the time within which a petition for rehearing may be filed at 10 days from the date this opinion is promulgated.

DAVISON, C.J., ARNOLD, V.C.J., and WELCH, LUTTRELL, HALLEY, JOHNSON, and O'NEAL, JJ., concur.