Application of OKLAHOMA TURN-PIKE AUTHORITY.

No. 35575.   July 2, 1952.

*246 P. 2d 327.*

618

Mitchell & Pershing, New York City, N.Y., and Robinson, Shipp, Robertson & Barnes Oklahoma City, for applicant, Oklahoma Turnpike Authority.

George H. Jennings, Sapulpa, for protestants.

WELCH, J. The applicant, hereinafter referred to as the Authority, pursuant to statutory provisions of the Oklahoma Turnpike Act, 69 O. S. 1951 §651 et seq., provided by resolution for the issuance of Turnpike Revenue Bonds in the additional sum of $7,000,-000 to mature August 1, 1990. This application for the approval of such bonds is authorized by statutory provisions of the Act, S. L. 1947, page 490, §18, Title 69 O.S. 1951 §668.

Notice of the hearing on such application was given in the manner provided by the last-cited section, and in due time appearance was made and protest against the issuance of the bonds was filed and presented by J. W. Dobson, Jr., and Alva E. Dobson.

Thereupon this court gave precedence to the cause and heard and considered the matters and contentions presented by the applicant and by the protestants in order to properly determine all questions presented and to reach the decision contemplated by that statute.

We have considered the application filed June 9, 1952, and the protest filed June 23, 1952, and have heard oral presentations by attorneys for the applicant and attorneys for the protestants.

At the outset we observe that in 1950 the Oklahoma Turnpike Authority presented its initial application for the approval of Turnpike Revenue Bonds in the sum of $31,000,000 to provide funds to build the Turner Turnpike between Tulsa and Oklahoma City. We approved that bond issue. Application of Oklahoma Turnpike Authority, 203 Okla. 335, 221 P. 2d 795. In that action various questions were settled as to the creation of the Oklahoma Turnpike Authority, its authority in the manner of the issuance of bonds and as to the procedure in such matters. In this action there is no question generally as to the power of the applicant to issue additional bonds. The application discloses the necessity and need for additional funds justifying the is-

suance and sale of additional bonds, and by reason of these facts and of our former decision above cited, we need now only discuss and determine the specific questions presented in connection with this application for the approval of this additional or supplementary bond issue.

Several questions are presented which we number and discuss consecutively for convenience and to meet the method of presentation.

First Question: "Was the Oklahoma Turnpike Authority authorized by the Act to sell the $7,000,000.00 additional turnpike revenue bonds of the Authority at public sale for $6,755,000.00 and accrued interest for bonds bearing interest at the rate of 3¾% per annum, such price requiring the payment of interest on the money received therefor at less than four per centum (4%) per annum computed with relation to the absolute maturity of the bonds in accordance with the standard table of bond values, excluding from such computation the amount of any premium to be paid on the redemption of any bonds prior to maturity?"

On this point essential facts are that the initial bond issue of $31,000,000, the last maturities thereof being August 1, 1990, and these additional bonds, in the sum of $7,000,000, will all be paid from revenue received from the operation of the Turner Turnpike extending between Tulsa and Oklahoma City.

The law provides for additional bonds to be issued if need therefor arises in the construction of the project. 69 O.S. 1951 §659. In the proceedings for the initial bond issue for construction of this project it was provided that additional bonds might be issued if such need therefor should arise and such provision was set out in each of the 31,000 bonds initially issued and sold. As to this additional or supplementary bond issue there is a definite tie-in with the initial bond issue, so that the bonds of both issues will be paid, principal and interest, through the plan provided by the trust agreement executed in connection with the

initial bond issue. That agreement provides in detail for the handling of all revenues from this toll road and for the payments therefrom of interest and principal of all bonds issued for construction of the project.

As to the sale of this additional or supplementary issue of $7,000,000 in bonds, due notice was given but there was only one bid. That bid was made by Shields & Company and associates who were the purchasers, or interested in the purchase, of the initial issue of $31,000,000 in bonds. That bidder offered to buy this issue of $7,000,000 in bonds for $6,755,000 in cash, the bonds of $7,000,000 to bear interest at the rate of 3.75% per annum. By calculation the applicant observed that the payment of the aforesaid interest rate for the life of these bonds plus the discount of $245,000 would result in the aggregate payment of less than 4% per year of the amount of money presently received, and therefore the applicant desires to accept such bid, and urges that a sale on that plan would be within the statutory provisions.

The protestants urge that such a sale plan is not within the statutory provision and that brings us to a consideration of the statutory provisions for the sale of such bonds. The statute, 69 O.S. 1951 §659, provides:

"The Authority shall sell such bonds at public sale. * * * All bonds shall be sold to the bidder who will bid therefor par and accrued interest, and who shall stipulate in his bid the lowest rate of interest which such bonds shall bear. It is the intent of this Act that the bonds shall be awarded to the bidder bidding rate or rates of interest which will be the lowest interest cost during the life of the bonds. * * *"

It is upon this provision that the protestants rely. But in this case there was no bidder who bid par and accrued interest. If there had been such a bidder then this provision of the statute might have application. This contention of the protestants overlooks

a subsequent provision in the same section, as follows:

"* * * The bonds need not be issued and sold in series. In no event shall the bonds be sold at a price so low as to require the payment of interest on the money received therefor at more than four per cent (4%) computed with relation to the absolute maturity of the bonds in accordance with the standard tables of bond values. * * *"

This latter provision clearly contemplates that bids might be received at less than par value as in the instant case. The purpose of that latter provision is to prevent the Turnpike Authority, in the case of such a bid, from selling the bonds at a price so low as to result in the payment of interest, or in the payment of such a sum for the use of the money as to result in a payment greater than 4% per annum "on the money received."

Protestants urge that it has heretofore been the legislative policy to require public bonds to be sold at not less than par and accrued interest. In that connection our attention is directed to the statute, 62 O.S. 1951 §§351 and 352. Section 351 does require that the bonds therein named must be sold for not less than par with accrued interest added, but that section specifically refers to "bonds issued by a vote of the people," while section 352 provides penalties for the wrongful sale of such bonds therein referred to. There is no provision in those sections specifically referring to revenue bonds such as the bonds involved in this proceeding. While these two sections definitely fix a state policy as to the type of bonds therein referred to, it does not follow that such policy need necessarily apply to bonds which are revenue bonds and which do not constitute any debt whatever against the state, or any county or school district or township or city or town.

The state policy as to revenue bonds, not obligations of the state, might be ascertained from a consideration of legislative acts authorizing such bonds at Oklahoma University, at A. & M. College, and at other state institutions, and as to bonds issued by the Grand River Dam Authority, and by the Oklahoma Turnpike Authority, and by the Planning and Resources Board.

Our Legislature has passed a number of acts dealing with special revenue bonds. In a number of such acts there was specific requirement that the bonds be sold for not less than par and accrued interest. We observe that specific requirement as to dormitory bonds for Oklahoma University and Oklahoma A. & M. College. S. L. 1945, p. 296. See Application of Board of Regents of University of Oklahoma, 195 Okla. 641, 161 P. 2d 447; Application of Board of Regents of University of Oklahoma, 200 Okla. 442, 195 P. 2d 936; Application of Board of Regents for Oklahoma Agr. and Mechanical College, 196 Okla. 622, 167 P. 2d 883, 201 Okla. 54, 200 P. 2d 901. See, also, the statutory provisions of 70 O.S. 1951 §1937, adopted in 1924. Likewise, the law expressly requires that the following specific revenue bonds be sold for not less than par and accrued interest. Langston Dormitory bonds, 70 O.S. 1951 §1504; Oklahoma Military Academy Building Bonds, 70 O.S. 1951 §§1580.2-1580.4; Northern Oklahoma Junior College Dormitory bonds, 70 O.S. 1951 §1907c; Oklahoma College for Women Dormitory bonds, 70 O.S. 1951 §1704, and Building Bonds for State Teachers College, 70 O.S. 1951 §1769.2.

That would seem to indicate a policy as applied to that particular type of bonds, that the same should be sold at not less than par and accrued interest. That provision in almost identical language was written into each of the aforesaid acts.

However, as to bonds for other types of construction we observe that construction bonds or revenue bonds issued by the Grand River Dam Authority are not required to be sold for par and accrued interest and same

may be sold along the same plan as the proposed sale in this case. 82 O.S. 1951 §870. Nor is the Grand River Dam Authority a "political corporation or subdivision of this State" as is referred to in 62 O.S. 1951 §§351 and 352, supra. See Sheldon v. G.R.D.A., 182 Okla. 24, 76 P. 2d 355, and State v. G.R.D.A., 195 Okla. 8, 154 P. 2d 946.

Likewise, as to improvement bonds or revenue bonds issued by the Oklahoma Planning and Resources Board there is no requirement that bonds shall sell for par and accrued interest. 1947 S.L. 605, Title 74, ch. 12a. See, also, Application of Oklahoma Planning and Resources Board, 201 Okla. 178, 203 P. 2d 415.

Thus we observe that as to all voted bonds the sale must be made at "not less than par and accrued interest" and that as to numerous issues of revenue bonds the sale likewise, by special provision of the various acts, must be made at "not less than par and accrued interest," but we find that in at least three instances the legislative acts do not contain any such language, and either by express language or clear implication, it is provided that the sale shall be made at such price as the payment in fact made for the use of the money received will not exceed a certain per cent per annum on the money received during the life of the bonds.

The protestants do not contend that the Legislature is without power to so provide. As to this question we conclude that the sections of the statute relied upon by protestants, that is, 62 O.S. 1951 §§351 and 352, have no application here. We conclude further that by the overall provisions of the statute referring to the Oklahoma Turnpike Authority, that is, 69 O.S. 1951 §659, the Turnpike Authority is not required to sell its bonds "at not less than par and accrued interest," but may under the circumstances here shown sell such bonds at the best price bid so long as its bonds shall not be sold "at a price so low as to require the payment of interest on the money received therefor at more than 4 percent computed with relation to the absolute maturity of the bonds in accordance with the standard tables of bond values."

If it be considered that there is a conflict between the above quoted provision of that section of the statute the last in order of position or arrangement would prevail under the specific holding in Gentry v. Blinn, 184 Okla. 9, 84 P. 2d-27.

We think by that section of the statute, considered as a whole, and noting the entire absence of any specific requirement that the bonds be sold for not less than par and accrued interest, that the legislative intention is clearly expressed as being in accord with our conclusion here.

Therefore we answer this first question in the affirmative.

Second Question. "Have the bonds been properly authorized in accordance with the act, and will the bonds when issued constitute valid obligations in accordance with their terms?"

In this connection we observe that the act specifically authorizes issuance of bonds from time to time, thus contemplating that there would or might be additional or supplementary bond issues. From the showing made we observe that the proceedings in connection with the initial bond issue made provision for such additional or supplementary bond issue as we have above noted. We also observe from the showing made that the Authority by proper resolution provided for this additional or supplementary bond issue with full explanation of the reasons why the funds provided by the initial bond issue were not sufficient to complete the construction of the Turner Turnpike. It is therefore clear that this additional or supplementary bond issue of $7,000,000 has been properly authorized in accordance with the Act. These bonds when issued will have equal validity with the bonds initially

issued in the sum of $31,000,000, and these bonds when issued will constitute valid obligations in accord with their terms. We answer the second question in the affirmative.

Third Question. "Is this court vested with jurisdiction to hear and determine this application of the Oklahoma Turnpike Authority?"

Such jurisdiction is fully conferred upon this court by statute 69 O.S. 1951 §668, where it is provided that the Authority may file an application with this court for the approval of any such bond issue and "exclusive original jurisdiction is hereby conferred upon the Supreme Court to hear and determine each such application." It is further provided in that section as follows:

"* * * If the court shall be satisfied that the bonds have been properly authorized in accordance with this Act and that when issued, they will constitute valid obligations in accordance with their terms, the court shall render its written opinion approving the bonds and shall fix the time within which a petition for rehearing may be filed. The decision of the court shall be a judicial determination of the validity of the bonds, shall be conclusive as to the Authority, its officers and agents, and thereafter the bonds so approved and the revenues pledged to their payment shall be incontestable in any court in the State of Oklahoma."

We therefore answer the third question in the affirmative.

Fourth Question: "Does the redemption privilege prior to maturity date affect the validity of these bonds or the calculation by which this bond sale is determined to be within the 4% limit of the statute heretofore discussed?"

On this point we observe that the trust agreement executed in connection with the initial bond issue provides that the Authority may in its discretion redeem any one or more of the bonds after August 1, 1960, and it is assumed that such provision will ap-ply to any bonds of this additional or supplementary issue. But we cannot assume that the Authority will exercise such option on any particular date between August 1, 1960, and the maturity date of the bonds on August 1, 1990, nor can we assume that such option will be exercised at all. We can only make the calculation as it applies to the maturity date of the bonds, that is, August 1, 1990. That seems to be the definite legislative intent expressed in the concluding language of 69 O.S. 1951 §659, that the computation shall be made "with relation to the absolute maturity of the bonds in accordance with the standard tables of bond values."

We therefore answer the fourth question in the negative.

In the course of the presentation of this application some reference has been made to details of the construction of the Turner Turnpike. There is suggestion of some objection to the route of the right of way, but obviously in view of the provisions of the statute which give this court jurisdiction to hear an application for approval of a bond issue, such matters could have no place in our consideration of the instant application. All matters or questions as to the route of the Turner Turnpike, if those questions have not already been settled, will be settled in the future by the Oklahoma Turnpike Authority, within its discretion, or in some other manner, but no such question can affect the validity of this bond issue, and we therefore need discuss such matter no further.

We have made full application of the law to each question propounded and have answered each question.

This court is wholly satisfied that this issue of $7,000,000 in bonds has been properly authorized in accordance with the Oklahoma Turnpike Authority Act, and that when issued these bonds will constitute valid obligations in accordance with their terms.

The application of the Authority is therefore granted and these bonds in the sum of $7,000,000 are approved by this court, and five days is fixed as the limit of time in which a petition for rehearing may be filed herein.

HALLEY, V. C. J., and DAVISON, JOHNSON, and O'NEAL, JJ., concur.