**In the Matter of the Application of the OKLAHOMA PLANNING AND RESOURCES BOARD for the Approval of Oklahoma Planning and Resources Board State Park Improvement Bonds.**

No. 36547.

Supreme Court of Oklahoma.

Aug. 9, 1954.

Rehearing Denied Sept. 13, 1954.

Mac Q. Williamson, Atty. Gen., J. Harry Johnson, Asst. Atty. Gen., for state of Okl.

George J. Fagin, Oklahoma. City, for Okl. Planning and Resources Bd.

Ada Lois Fisher, Chickasha, for D. J. Diggs.

JOHNSON, Vice Chief Justice.

This is an application by the Oklahoma. Planning and Resources Board for the approval of state park improvement bonds, which it proposes to issue for the making of park improvements on numerous state owned parks and for refunding $850,000 park bonds issued and improved by this court in In re Application of Oklahoma. Planning and Resources Board, 201 Okl. 178, 203 P.2d 415. The amount of bonds proposed to be issued is in the sum of $7,-200,000. The application for our approval

was filed pursuant to authority given in section 17, Ch. 12a, Title 74, S.L.1947, p. 611, 74 O.S.1947, Supp. § 356.17 as amended by the Laws 1953, p. 420, Sec. 3, 74 Okl.St., Supp., Secs. 356.1–356.20. Notice of the hearing of the application was duly published; no protests were filed nor objections made, and the matter came on for hearing on the written application and the instruments attached thereto and made a part thereof.

Examination of the application and instruments submitted shows that the issuance of the bonds are in substantial conformity with the provisions of the law (see statutes cited above) which was enacted for the purpose of enabling the Oklahoma Planning and Resources Board to make improvements in the various state parks and to pay the cost of such improvements out of the fees chargeable for their use and the use of the various facilities of the parks as provided in said acts.

It appears that the prospective purchasers of the bonds have raised certain questions as to the constitutionality of the law, and also as to the plan of the operation of the development program as set out in the resolution of the Board authorizing the issuance of the bonds. We will consider these questions in the order in which they appear in the application.

The first question is: Are the bonds as authorized to be issued an indebtedness of the State of Oklahoma in violation of Section 23, Article 10 of the State Constitution as amended on March 11, 1941, and Sections 24 and 25, Article 10, State Constitution? The bonds expressly provide that they shall be payable solely from the revenues derived from the operation of the parks and shall not be an indebtedness of the State of Oklahoma or the Oklahoma Planning and Resources Board. In the case of In re Oklahoma Planning and Resources Board, supra, we held that such bonds were not violative of these sections of the Constitution if in accord with statutory provisions, supra, the bonds expressly provided that they were payable solely from the revenues to be derived from the operation of the state parks, and not an indebtedness of the State of Oklahoma or the Oklahoma

Planning and Resources Board. The bonds herein meet the requirements of the statute and the above decisional rule.

The second question presented is whether the lease agreements to be entered into by and between the Board and the lessee prior to issuance of the bonds cover all of the facilities which are required by the statute to be under lease, and are such lease agreements sufficient to satisfy the requirements of Section 3 of Title 74, Chapter 12a, Session Laws of Oklahoma, 1953, 74 O.S. Supp. § 356.8, supra.

This question is identical to the second question in the case of In re Oklahoma Planning and Resources Board, supra. The statutory provisions involved and the factual situation herein is practically the same as therein, except that more than one park is included in the subject matter of the leases. The rule announced there is applicable here. It is not necessary herein to again discuss the facts and legal principles involved. We are of the opinion that the lease agreements sufficiently satisfy the requirements of the statute.

The third question presented is whether the Board may refund presently outstanding State Park Bonds payable from the revenues of the facilities at Lake Murray State Park into this issue of bonds payable from the combined revenues of the parks of the state and overlapping interest be paid to January 1, 1955.

Section 16 of Chapter 12a, Title 74, Session Laws of 1947, 74 O.S.1951 § 356.16, expressly provides for the issuance of refunding bonds refunding any obligations of the Board. Section 16 reads:

"The Board may issue bonds hereunder for the purpose of refunding any obligations of the Board theretofore issued hereunder, or may authorize and deliver a single issue of bonds hereunder in part for the purpose of refunding such obligations and in part for the acquisition of additional properties or improvements. Where bonds are issued under this Section solely for refunding purposes, such bonds may either be sold as above provided or delivered in exchange for the outstanding

obligations. If sold, the proceeds may be either applied to the payment of the obligations refunded or deposited in escrow for the retirement thereof. Nothing herein contained shall be construed to authorize the refunding of any outstanding obligations which are not either maturing, callable for redemption under their terms, or voluntarily surrendered by their holders for cancellation. All bonds issued under this Section shall in all respects be authorized, issued and secured in the manner provided for other bonds issued under this Act, and shall have all of the attributes of such bonds. The Board may provide that any such refunding bonds shall have the same priority of lien on the revenue pledged for their payment as was enjoyed by the obligations refunded thereby."

Section 3 of Chapter 12a, Title 74, Session Laws of Oklahoma 1953, 74 O.S.Supp. § 356.8, provides:

"The Board shall prescribe and collect reasonable rates, fees, tolls or charges for the services, facilities and commodities rendered by all property of the Board, the revenues of which have been pledged to the payment of bonds issued hereunder, and shall revise such rates, fees, tolls, or charges from time to time whenever necessary to insure that the revenues to be derived therefrom shall be fully sufficient to pay principal of and interest on such bonds. The gross revenues derived by the Board from the operation of any part or parts of the properties of the Board, but no revenues derived by the Board through legislative appropriations or from sources other than operation of the properties of the Board, may be pledged to the payment of such principal and interest. Provided, that the Board is hereby authorized to construct improvements in several parks and/or recreation areas and authorize the issuance of one issue of bonds for all such improvements, and to pledge for the payment of such bonds and the interest thereon, revenues derived by the Board from the operation of any or all of the parks and/or recreational areas for the construction of·improvements in which any such consolidated bond issue has been authorized."

The second paragraph of Section 2 of Chapter 12a, Title 74, Oklahoma Session Laws 1953, 74 O.S.Supp. § 356.6, provides:

"Any resolution authorizing the issuance of bonds under this Act may contain covenants, including, but not limited to, (a) the purpose or purposes to which the proceeds of the sale of bonds may be applied, and the deposit, use, and disposition thereof; (b) the use, deposit, securing of deposits and disposition of the revenues of the Board, including the creation and maintenance of reserves; (c) the issuance of additional bonds payable from the revenues of the Board; (d) the operation and maintenance of properties of the Board; (e) the insurance to be carried thereon, and the use, deposit and disposition of insurance monies; (f) books of account and the inspection and audit thereof and the accounting methods of the Board; (g) the non-rendering of any free service by the Board; and (h) the preservation of the properties of the Board, so long as any of the bonds remain outstanding, from any mortgage, sale, lease or other encumbrance not specifically permitted by the terms of the resolution."

These statutes provide all power necessary for the Board to refund indebtedness, prescribe and collect reasonable rates, fees, tolls or charges for the services, facilities and commodities rendered by all property of the Board. The gross revenue derived by the Board from the operation from any part or parts of the properties of the Board may be pledged to the payment of the principal and interest of the bonds. The Board is authorized to enact a resolution containing covenants to carry into effect such obligations.

The record discloses that the revenues from Lake Murray State Park facilities produced more than was necessary to liquidate the bonds as they become due, but that

no part of the revenues pledged to the liquidation of Lake Murray bond issue could be used by the Board for other state park improvements, and that so long as any of the bonds were outstanding the Board under its agreement would not issue any additional bonds or obligations payable from the revenues pledged to said issue; thus preventing other needed state park improvements which would inure to the benefit of the whole state.

Unquestionably the statutes permit the Board to refund the Lake Murray State Park Improvement Bonds into part of this issue of bonds and make the entire issue including that part which is deemed refunding bonds to be payable from revenues derived from operation of the combined park properties of the Board. Otherwise the plan intended by the amended park statutes to secure improvements for all parks of the state could not be carried out. The provisions of the bond resolution in this respect are proper.

Further it was necessary to have some overlapping interest paid since the first day when the Lake Murray State Park Improvement Bonds were callable for redemption is January 1, 1955, while the bonds in issue are dated July 1, 1954. The statute places it within the discretion of the Oklahoma Planning and Resources Board to fix and determine the time and method of refunding.

We conclude that the Board may refund State Park Improvement Bonds payable from revenues of facilities at Lake Murray State Park into this issue of bonds payable from the combined revenues of the parks of the State, and the refunding may be so handled that a certain amount of overlapping interest be paid.

The fourth question pertains to the inquiry of whether the provisions of the Bond Resolution which provide for the charging of entrance fees to the improved areas of the parks as defined in Section 7 of said Bond Resolution, violate the prohibition against the collection of rates, tolls or charges for use of highways, bridges, entrance to park sites, or waterways as provided in Section 3, Chapter 12a, Title 74,

Oklahoma Session Laws 1953. It is sufficient for us to say that the resolution and governing statute are identical to the resolution and governing statute in In re Oklahoma Planning and Resources Board, supra, and for the reasons therein given we conclude that the prohibition in the statute is in no way applicable to entrance fees to an improved area within the area of one of the Board's parks, which has been improved by this bond issue.

The fifth question presented deals with the inquiry as to the validity of the provisions of the Bond Resolution which provides that the revenues from the operation of facilities in the parks which are constructed in the future with the proceeds of other bonds of this authorized issue may be included as a source of payment for the bonds initially to be issued.

This is a usual and customary provision in revenue bond resolutions. Every college and other revenue bond provides that the bonds issued are payable not only from the revenues of the improvements made from the bond issue but also from additions, extensions and replacements thereto.

The Board Resolution authorizes the issuance of $25,000,000 Park Improvement Bonds, and $7,200,000 of such bonds are being issued at this time with request for approval by this Court.

It was stated in oral argument by the attorneys for the Board that it was unnecessary for this Court to approve the full $25,000,000 bond issue. We are therefore not passing on, or approving, the legality of the full amount of the proposed bond issue, but are approving only the bonds issued in the amount of $7,200,000.

Section 2 of the Bond Resolution pledges to the payment thereof all revenues and income from the operation of the parks during the period while any of the bonds authorized remain outstanding.

There is no legal objection to the provision that the bonds issued may be paid from revenues derived from the operation of the facilities in parks improved in the future with other bonds of the same issue. Section 2 of Chapter 12a, Title 74, Okla-

homa Session Laws 1953 vests power in the Board as follows:

"The Board shall have power and is hereby authorized from time to time to issue its negotiable bonds in anticipation of the collection of all or any part of its revenues, for the purpose of constructing, acquiring, reconstructing, improving, bettering or extending any properties which it is authorized to acquire, maintain or operate hereunder, including park properties now owned or leased by the State or the Board and shall pledge, to the payment of the interest on and principal of such bonds, all or any part of the revenues derived from the operation of the· properties so controlled and operated by the Board."

Section 3 of Chapter 12a, Title 74, Oklahoma Session Laws 1953, sets out the policy to allow one complete issue of bonds for improvements in several parks and/or recreation areas and to pledge for the payment of bonds and the interest thereon revenues derived by the Board from the operation of any or all of the parks and/or recreational areas for the construction of improvements in which any consolidated bond issue has been authorized.

The last question is: "Do the provisions of the Bond Resolution requiring payment into the Bond Fund of amounts that will retire the bonds issued in approximately seventeen years although the bonds do not mature until 1984, violate the statute authorizing the issuance of the bonds?"

The Board could have fixed the maturity of the bonds as 17 years from their date because it is apparent that revenues from the properties and facilities operated by the Board will be sufficient to retire the $7,200,-000 bonds within that time. However, as a precautionary measure, the Board has seen fit to name an actual maturity date of 30 years from date of issuance.

The applicable statute does not require that the bonds mature on a specified date, but leaves it to the discretion of the Board as to the time the bonds shall mature, and contains only a limitation that such maturity of the bonds shall not exceed 40 years from date. Consequently, it is wholly within the discretion of the Board as to the maturity of the bonds, as long as such maturity date is within the 40 year limitation.

The arrangement of payment will not mean idle funds. The bond resolution expressly provides in the last paragraph of paragraph number (a) 1 of Section 8 as follows:

"Money remaining in the Bond Fund in each fiscal year after all interest falling due in such year has been paid or provision· for such payment made and after the Reserve Account has been accumulated to its required amount, shall be applied to the retirement of as many of the bonds as can be retired with the surplus so available. Bonds so retired shall be purchased on the open market at the best price or prices obtainable with due diligence, or, on or after. July 1, 1956, may be called for redemption, but no bond shall be purchased at a price greater than the redemption price prevailing on the next redemption date. All bonds so purchased or redeemed shall be cancelled and shall not be subject to reissuance."

In other words surplus money remaining in the bond fund in each fiscal year after all interest falling due in each year and after reserve account has been accumulated to its required amount shall be applied to retirement of bonds either by purchase on open market or call for redemption on or after July 1, 1956. All bonds so purchased or redeemed shall. be cancelled and shall not be subject to reissuance. Within a period of three years the reserve will be fully created, and bonds can be paid off by purchase or call for· redemption whichever amount is less. Interest will be saved by such procedure.

The· Act, Section 2, Chapter 12a, Title 74, Oklahoma Session Laws, 1953, authorizes such procedure because it provides that the Board Resolution may contain such terms, covenants and conditions as' such resolutions or subsequent resolution may provide. Said Section 2 further provides that any resolution authorizing the issuance of the bonds may contain covenants, in-

cluding but not limited * * * (b) the use, deposit, securing of deposits and disposition of the revenues of the Board including the creation and maintenance of reserves.

We conclude that the provisions of the Bond Resolution requiring payment into the Bond Fund of amounts that will retire the bonds issued in approximately 17 years, although the bonds do not come due according to their terms until 1984 is proper.

On July 28, 1954, after the protest period, a pleading termed a protest was filed by D. J. Diggs in which he alleges that the park facilities are and will be maintained and operated on a separate and segregated basis and that he and others similarly situated will be denied and refused the free, full and unrestricted use of the parks and park facilities maintained and operated by the Oklahoma Planning and Resources Board because of their race and color, contrary to the constitution and laws of the United States.

No justiciable question is raised by this pleading and we find nothing in the bond proceedings which would justify such complaint.

The bonds issued in the sum of $7,200,000 are approved and we fix the time within which a petition for rehearing may be filed at five days from the date this opinion is promulgated.

HALLEY, C. J., and DAVISON and ARNOLD, JJ., concur.

O'NEAL, J., concurs by reason of stare decisis.

WELCH, CORN, WILLIAMS, and BLACKBIRD, JJ., dissent.

WILLIAMS, Justice (dissenting).

I am unable to agree with the majority opinion and believe it to be in direct conflict with our opinion in the Application of the Oklahoma Educational Television Authority for Approval of its Bonds, Okl. 272 P.2d 1027.

The first question presented by the application is:

Are the bonds as authorized to be issued an indebtedness of the State of Oklahoma in violation of Section 23, Article 10 of the State Constitution as amended on March 11, 1941, and Sections 24 and 25, Article 10, State Constitution? I am of the opinion that this question should be answered in the affirmative.

In 74 O.S. 1951 § 356.1, which pertains to the Oklahoma Planning and Resources Board, the following language appears:

"For the purpose of this Act, the Board is hereby declared to be a governmental agency and instrumentality of the State of Oklahoma * * *."

And in 74 O.S.Supp. § 356.2, we find the following provisions:

"The Board shall have and is hereby authorized to exercise the following powers, rights and privileges:

"1. To have the exclusive possession and control of, and to control, operate and maintain for the benefit of the people of the State of Oklahoma all state parks and all lands and other properties now or hereafter owned by the State for park or recreational purposes.

"2. To acquire by purchase, lease, gift, condemnation or in any other manner and to maintain, use and operate any and all property, real, personal or mixed, necessary or convenient to the exercise of the powers, rights, privileges and functions conferred upon it by this Act. *Title to all such property shall be vested in the State of Oklahoma,* although such property is sometimes herein referred to as property 'of the Board.'" (Emphasis added.)

74 O.S. 1951 § 351k, creates in the State Treasury a revolving fund to be known as the State Park Fund which is to consist of all moneys that are received from the sale of permits, penalties, fees, fines, forfeitures or licenses collected by the State or any subdivision thereof, or any public officer or any other person for the violation of the laws or regulations pertaining to State Park laws of this state.

74 O.S.1951 § 351*l*, contains the following pertinent provisions:

"The Board is hereby empowered to operate, rent, or lease any and all concessions, cottages, buildings, etc., necessary or desirable for the pleasure of park visitors, and may set fees and make rules governing their use; * * Provided further, that no building or structure or improvements other than State-owned buildings, or structures, may be constructed on any State park at any time. * * * Provided further, that all fees or rentals collected shall be deposited in the State Treasurer monthly on the first of each calendar month to the credit of the State Park Fund."

74 O.S. 1951 § 356.11 provides that nothing in the statute shall be construed to authorize the Board to mortgage or otherwise encumber any of its property of any kind except that the revenue thereof may be pledged as provided by statute.

The last paragraph of Sec. 23, Art. 10 of the State Constitution as amended on March 11, 1941, provides in pertinent part:

"The State shall never create or authorize the creation of any debt or obligation, or fund or pay any deficit, against the State or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid * * ."

The word "debt" is defined as "That which is due from one person to another, whether money, goods, or services; that which one person is bound to pay to another, or to perform for his benefit; thing owed; an obligation or liability."

It is clear that the Oklahoma Planning and Resources Board is a department, institution or agency of the State, since the statute specifically so provides. The first sentence of each of the bonds proposed to be issued reads as follows:

"Know All Men By These Presents, that the Oklahoma Planning and Resources Board for value received promises to pay to bearer,"

I am unable to conceive how such a bond could constitute anything other than a debt of the Oklahoma Planning and Resources Board and thereby be in direct contravention of the plain provisions of the Constitution above quoted.

The Oklahoma Planning and Resources Board is not only a State institution or agency but it is one supported by State appropriated funds and is not a self-liquidating agency such as the Grand River Dam Authority or the Oklahoma Turnpike Authority. This is well illustrated by the fact that the total appropriations for all functions of the Board for the fiscal year 1954–55 was in the amount of $1,371,800. In approving the bonds issued by the Grand River Dam Authority in State ex rel. Kerr v. Grand River Dam Authority, 195 Okl. 8, 154 P.2d 946, this Court said the defendant authority did not operate in whole or in part on State revenue and was therefore not embraced within the terms of the constitutional provision in question. Such a statement cannot be made concerning the Oklahoma Planning and Resources Board, however, as it obviously operates to a great extent on State revenue.

Furthermore, the resolution of the Board and the proposed bonds pledge all revenue and income of every nature derived from the operation of the State parks, which includes many fees and rentals which are required by law to be paid into the State Park Fund. In effect the bonds create a debt against the State Park Fund. In application of the Oklahoma Educational Television Authority for approval of its Bonds, supra, we held the attempt to create a debt against the Public Building Fund unconstitutional. I can see no valid distinction, so far as constitutionality is concerned, between a debt against the Public Building Fund and one against the State Park Fund.

We have in the past held certain bond issues to be non-violative of the constitutional inhibition against debt on the grounds that the bonds were completely self-liquidating in that the only funds pledged for their payment were those constituting the income received from the facility constructed with the proceeds of the bonds. Such a situation does not exist here, however, as the proposed bond issue pledges receipts from already existing State-owned facilities. In fact, the openly avowed pur-

pose of the bond issue is to build facilities which may not be self-liquidating at the expense of proven self-liquidating facilities.

Furthermore, under the proposed bond issue, the Board is obligated to keep all buildings and structures in all the parks insured in an amount equal to the face value of all outstanding bonds and to repair or restore same in case of damage or destruction and is required to carry use and occupancy insurance. There is no provision as to the source of the funds to pay the cost of these obligations and they are made absolute obligations, obviously, compliance with these obligations might require the expenditure of State funds, and such provisions therefore constitute a pledging of State funds in violation of the constitutional prohibition.

It is urged that this court has already passed on the contentions hereinabove set forth and held bond issues of the same nature as the one considered here to be valid. Research on the question reveals that this court has considered so-called self-liquidating bond issues in seven cases, prior to the Television authority case, supra, namely, Baker v. Carter, 1933, 165 Okl. 116, 25 P.2d 747; Sheldon v. Grand River Dam Authority, 1938, 182 Okla. 24, 76 P.2d, 355; State v. Grand River Dam Authority, 1945, 195 Okl. 8, 154 P.2d 946; Application of Board of Regents of University of Oklahoma, 1945, 195 Okl. 641, 161 P.2d 447; Application of Board of Regents for Oklahoma Agricultural and Mechanical Colleges, 1946, 196 Okl. 622, 167 P.2d 883; Application of Oklahoma Planning and Resources Board, 1949, 201 Okl. 178, 203 P.2d 415; and Application of Oklahoma Turnpike Authority, 1950, 203 Okl. 335, 221 P.2d 795. The opinions in the first two cases, Baker v. Carter, supra, and Sheldon v. Grand River Dam Authority, supra, were promulgated prior to the adoption of the 1941 amendment to Sec. 23, Article 10 of the Constitution, and are therefore not relevant to the present case. The first case considered after the adoption of the 1941 Constitutional Amendment was that of State v. Grand River Dam Authority, supra. The court held there that the amendment to section 23, article 10 of the Constitution adopted in 1941 did not apply to an agency of the State which was created without the appropriation therefor of State revenue and which operates on revenues that are not in whole or in part derived through or under the taxing power of the State and which is without right to incur indebtedness for the payment of which resort, but for said amendment, might properly be had to the taxing power of the State and that the authority of the defendant to issue bonds under prior legislative authority was not impaired by the adoption of the constitutional amendment.

The next case to arise was that of Application of Board of Regents of University of Oklahoma, supra. In that case we said that there was no material distinction between it and the Grand River Dam Authority case, supra, and approved the bond issue accordingly. Such holding was obviously in error since there is a very apparent distinction in the two cases. The Board of Regents of the University of Oklahoma is not an agency of the State which was created without appropriation therefor of State revenue and operates on revenues that are not in whole or in part derived through or under the taxing power of the State, as was the Grand River Dam Authority—nor had the authority of the Board of Regents to issue the bonds there in question been granted by legislative enactment prior to the adoption of the 1941 constitutional amendment. The whole basis for the holding in the Grand River Dam authority case did not even exist in the Board of Regents of University of Oklahoma case and yet this court said there was no distinction.

The next case to arise was that of Application of Board of Regents for Oklahoma Agricultural and Mechanical Colleges, supra, in which the bonds involved were approved on the authority of Application of Board of Regents of University of Oklahoma, supra, without further comment.

The case of Application of Oklahoma Planning and Resources Board, supra, which involved the Lake Murray Board issue, was the next case to arise, and in it this court disposed of the constitutional question by merely saying that the right of the legislature to provide for the carrying

out of self liquidating projects by state agencies had been upheld in numerous cases and citing in support thereof two cases which were decided prior to the 1941 constitutional amendment and Application of Board of Regents for Oklahoma Agricultural and Mechanical Colleges, supra. It is true that this case is quite in point with the one at bar, but it is also true that the opinion is quite patently in error and completely ignores the plain provisions of the 1941 constitutional amendment.

The same holding was made in Application of Oklahoma Turnpike Authority, supra, citing all of the cases above discussed as authority therefor. The Oklahoma Turnpike Authority is an agency which would qualify as an exception under the rule laid down in State v. Grand River Dam Authority, supra, and that opinion is therefore probably not in error, although the statement of law contained therein is erroneous.

Not until the opinion in Application of the Oklahoma Educational Television Authority For Approval of Its Bonds, supra, was promulgated was any serious consideration given in any case to the effect of the 1941 constitutional amendment. There for the first time it was pointed out that the 1941 constitutional amendment applied to all debts and not to just those which might look to the taxing power for payment, thoroughly demonstrating the incorrectness of prior holdings to the contrary.

A careful review of all of these cases leads me to the conclusion that only the cases of State v. Grand River Dam Authority, supra, and the Television Authority case, supra, contain any pertinent law on the question before us, and that the proposed bond issue should be disapproved.

The proposed bond issue is also objectionable on other grounds, which I will mention but briefly.

Such bonds provide that in the event of default the bondholders may apply as a matter of right for the appointment of a receiver who may enter and take possession of all of the parks or any part thereof and operate and maintain the same. Such a provision is clearly violative of 74 O.S. 1951 § 356.11, above mentioned which prohibits the Board from mortgaging or otherwise encumbering any of its property of any kind, except that the revenues may be pledged. The right to have a receiver take over State owned property surely must constitute an encumbrance of such property.

The bond resolution in question provides for the charging of entrance fees to the improved areas of the parks, as defined in Section 7 of said Bond resolution. Such a provision is obviously in violation of the prohibition against the collection of rates, tolls or charges for use of highways, bridges, entrance to park sites, or waterways found in Section 3, Chapter 12a, Title 74, Oklahoma Session Laws 1953. Furthermore, the authority of the Board to levy and collect fees and charges is set out in 74 O.S.Supp. §§ 356.2 and 356.8 and by no stretch of the imagination includes any authority to impose an entrance fee to any so-called improved area.

The bond resolution and proposed issue is also objectionable in that it proposes to refund presently outstanding State Park Bonds payable from the revenues of the facilities at Lake Murray State Park into this issue of bonds, which are dated July 1, 1954, payable from the combined revenues of the parks of the state, and provides that overlapping interest be paid to January 1, 1955. While 74 O.S.1951 § 356.16 authorizes refunding of bonds and is relied on here as authority for the proposed action, it specifically provides:

"Nothing herein contained shall be construed to authorize the refunding of any outstanding obligations which are not either maturing, callable for redemption under their terms, or voluntarily surrendered by their holders for cancellation."

The only possible purpose of this provision is to prevent the paying of double interest such as is sought to be paid here. The outstanding State Park Bonds are not maturing and are not callable for redemption prior to January 1, 1955. They are therefore obviously not subject to refunding now unless voluntarily surrendered by their holders for cancellation. The fact that

they will become callable January 1, 1955, does not authorize the issuance of refunding bonds on July 1, 1954.

The statute authorizing the Board in question to issue its so-called revenue bonds, places no limit upon the amount of issue and virtually no control upon the purposes for which same may be expended. This, to my mind, absolutely condemns the Act as unconstitutional, as being an improper attempt to delegate legislative authority. In 11 Am.Jur. Constitutional Law, Sec. 240, at page 957, it is said:

"Although there is no standard, definite or even approximate, to which legislation must conform, 'it is not validly enacted where it produces a delegation of legislative authority which is unconfined, vagrant, and not canalized within banks to keep it from overflowing.' "

In Smithberger v. Banning, 129 Neb. 651, 262 N.W. 492, 100 A.L.R. 686, the first paragraph of A.L.R. Editor's syllabus, is as follows:

"A statute which appropriates $4,000,000 for 'work relief, direct relief, old age assistance, assistance to dependent mothers and children, unemployment insurance, health of mothers and children, public health or related matters of security and welfare, and public works, especially roads, by the use of work relief labor,' to be expended by an administrative board, without providing rules and standards of guidance and leaving the distribution of the fund among the various purposes set out in the act to the arbitrary discretion of the administrative board, is an unconstitutional attempt to delegate legislative authority."

Further authorities dealing in a general way with the subject may be found in A.L.R. Constitutional Law, Sec. 71, (13) and A.L.R. Bonds, 130.

I therefore respectfully dissent.

WELCH, Justice (dissenting).

As I view it the Board goes too far in reference to the monies pledged to pay these bonds. This transaction is thereby taken out of the class of self-liquidating debts and is brought into violation of Sec. 23, Art. 10 of the Constitution. See the 1953 Legislative Act referred to in the majority opinion.

The overall pledges made as to the revenues to be applied to pay this bond debt, and as to stated obligations of the Board, go further than in any other case where this Court has approved revenue bonds, and they constitute this a debt and obligation against this Agency of the State and against this Institution of the State, if not against the State itself, as I see it, and that is prohibited by the Constitution.

The constitutional provision above cited, as adopted by vote of the people in 1941, provides, in material substance, as follows:

"The State shall never create or authorize the creation of any debt or obligation, or fund or pay any deficit, against the State, or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid, * * *."

I reach my conclusion herein from the language of the Constitution itself, and in part from our decision in the Television Bond case, 272 P.2d 1027.

There is no question but that the pledge of certain portions of the revenues is quite proper, and it may be that the properly pledged portion of the revenues will be sufficient to pay the bonds so that no other funds or revenues need be applied thereto, but that would not change the fact nor the legal conclusion that the present transaction as set up in the Bonds, the Resolution and in the Trust Agreement, creates a debt and an obligation in violation of the Constitution, as I see it.

Therefore I respectfully dissent and I am authorized to say that Mr. Justice Blackbird joins in these views.

CORN, Justice (dissenting).

In this case we are called upon to say whether the resolution of the Planning and Resources Board passed by it July 29th, 1954, is in violation of Section 23, Article

10 of the State Constitution. The resolution is as follows:

"*A Resolution* authorizing the issuance of $25,000,000 State Park Improvement Bonds of the Oklahoma Planning and Resources Board for the purpose of making improvements to state parks and for the purpose of refunding certain bonds heretofore issued for such purpose; confirming the sale of such bonds; providing for the payment of principal thereof and interest thereon; providing for the security of such bonds, and entering into certain covenants and agreements in the above connection."

"*Whereas* there now exist in the State of Oklahoma for the use and convenience of the inhabitants thereof recreational areas designated as 'state parks' all of which state parks are to be improved with the proceeds of the bonds herein authorized, and all state parks hereafter acquired by the State of Oklahoma prior to the issuance of the last of the bonds herein authorized will be similarly improved with the proceeds of such bonds. Accordingly, all parks and recreational properties now owned by the State of Oklahoma, together with all additions which may be made thereto and all additional park and recreational properties which may be hereafter acquired by the State of Oklahoma and by Oklahoma Planning and Resources Board and improved with any part of the proceeds of the bonds herein authorized, are hereinafter sometimes referred to as "the parks"; and

"*Whereas* jurisdiction over the parks is imposed in the Oklahoma Planning and Resources Board, which board is sometimes hereinafter in this resolution referred to as "the board," and it has been determined by the board to be necessary, in order to make available to the people of the state fuller benefit of the recreational opportunities afforded by the parks, to improve the parks through the acquisition and construction in the parks of recreational facilities, lodges, restaurants and cabins and to make such other improvements thereto as are contemplated by the plan of improvement heretofore approved by the board; and

"*Whereas* the board does not have funds available for such purposes, and it is therefore desired to pay the cost thereof through the issuance of the revenue bonds of the board, pursuant to authority contained in Chapter 12a of Title 74 of the Session Laws of Oklahoma, 1947, as amended; and

"*Whereas* the board has heretofore issued $850,000 revenue bonds for the purpose of improving Lake Murray State Park and as pledged to the payment of such bonds the revenue to be derived from the operation of Lake Murray State Park, and in order to make possible construction of additional improvements in Lake Murray State Park and in order to release for the payment of bonds issued to improve other parks, the revenue now pledged to the payment of the aforesaid revenue bonds, it is desired to refund said bonds into an issue of revenue bonds payable from the revenue of all of the parks, which bonds shall be issued for the combined purpose of improving all of the parks and refunding the aforesaid revenue bonds payable from the revenue of Lake Murray State Park, which bonds are under their terms subject to call for redemption on January 1, 1955, and can be so called for redemption and refunded;

"*Now, Therefore,* Be It Resolved by the Oklahoma Planning and Resources Board, as follows:

"*Section 1.* That the parks be improved as recited in the preamble hereto.

"*Section 2.* That for the purpose of paying the cost of improving the parks, and for the purpose of refunding $850,-000 State Park Improvement Bonds dated January 1, 1949, numbered 1 to 850, inclusive, due January 1, 1979, including the payment of reasonable

legal, engineering and fiscal services incidental thereto, and to pay interest on each block of the bonds herein authorized for the period to be covered by the construction of the improvements to the parks to be acquired with the proceeds of such block and for a period of six months thereafter, there shall be issued on the credit of the income and revenue to be diverted by the board from the operation of the parks, bonds in the principal amount of $25,000,000. All revenue and income of every nature derived from the operation of the parks during the period while any of the bonds herein authorized remain outstanding, including specifically, but without limitation, money received as rentals or otherwise for the use of all buildings and facilities located in the parks, admission fees charged for entrance to the portion of each park hereinafter defined as the 'Improved Area,' fees and charges collected for the inspection of watercraft, money received for licenses and permits, including permits for the operation of water-craft, money received from concessionaires operating in the parks, charges made for the use of facilities owned and operated by the board within the boundaries of the parks, income from fishing licenses and permits (except to the extent that such revenue is now required by law to be used for some other purpose), fees received for the use of bridle paths in the parks, and generally, all revenues received by the board from the operation of all facilities existing in the several parks, or from any lease or other use of any or all of the parks or portion thereof, are collectively hereinafter in this resolution sometimes referred to as 'the revenues'.

"*Section 3.* That said bonds shall be known as 'State Park Improvement Bonds' (hereinafter in this resolution sometimes referred to as 'the bonds'), shall be dated July 1, 1954, shall be in the denomination of $1,000 each, shall be numbered 1 to 25,000, inclusive, and

shall be payable as to both principal and interest at The First National Bank and Trust Company and Oklahoma City, in the City of Oklahoma City, Oklahoma, or at the option of the holder thereof at United States Trust Company of New York, in the City of New York, New York. Bonds numbered 1 to 7200, inclusive, shall bear interest at the rate of four and one-half per cent (4½%) per annum from date until paid, and bonds numbered 7201 to 25,000, inclusive, shall bear interest at such rate or rates as may be determined at the time of the sale therof, all of which interest is to be payable January 1, 1955 and semi-annually thereafter on January 1 and July 1 of each year. The bonds numbered 1 to 7200, inclusive, shall mature as to principal on July 1, 1984, and bonds numbered 7201 to 25,000, inclusive, shall mature on July 1 of the thirtieth year after issuance.

"The bonds shall be callable for redemption prior to maturity at the option of the board, with the bonds to be so redeemed on each interest payment date to be selected by lot, on July 1, 1956 and on any payment date thereafter, but only if payment therefor can be made from the revenues derived from the operation of the parks. The bonds shall also be callable for redemption prior to maturity at the option of the board, in part, by lot or as a whole, without regard to the source of payment, on July 1, 1964 and on any payment date thereafter. Any bond redeemed pursuant to either option of redemption so reserved shall be redeemable at the principal amount thereof plus accrued interest to the date fixed for redemption and a premium of $50 if so redeemed on or prior to July 1, 1968, $40 if redeemed thereafter on or prior to July 1, 1972, $30 if redeemed thereafter on or prior to July 1, 1976, $20 if redeemed thereafter on or prior to July 1, 1980, and $10 if redeemed thereafter prior to maturity. Notice of redemption shall be given not less

than thirty days prior to the date fixed for redemption by notice sent by registered mail to the holder or holders of the bonds to be redeemed, directed to the addresses shown on the Registrar's registration books. If any bond to be so redeemed is not registered as to principal at least thirty days notice shall be given through publication of an appropriate notice in a financial newspaper or journal published in the City of New York, New York, and sent by registered mail to the banks at which the bonds are payable. * * *"

Section 23, Article 10 of the State Constitution as amended on March 11, 1941, is as follows:

"The State shall never create or authorize the creation of any debt or obligation * * * against the State, or any department, institution or agency thereof, regardless of its form or the source of money from which it is to be paid * * *."

The following tabulation shows the income of the various state parks for the past fiscal year from presently existing facilities:

| | | |
|---|---|---|
| 1. | Quartz Mountain | $19,157.14 |
| 2. | Beavers Bend | 14,946.64 |
| 3. | Robbers Cave | 30,370.41 |
| 4. | Osage Hills | 6,235.27 |
| 5. | Boiling Springs | 3,080.43 |
| 6. | Sequoyah | 22,366.90 |
| 7. | Texoma | 9,496.40 |
| 8. | Roman Nose | 17,112.77 |
| 9. | Lake Wister | 98.25 |
| 10. | Alabaster Caverns | 559.45 |
| 11. | Greenleaf Lake | 1,118.31 |
| 12. | Tenkiller | 6,216.01 |

Appropriations to the Oklahoma Planning and Resources Board are as follows:

| Fiscal Year | Total Appropriation all functions, including Administration | Park Operation | Park Capitol Improvements |
|---|---|---|---|
| 1943–44 | $ 175,836.30 | $ 38,900.00 | $ 8,787.40 |
| 1944–45 | 122,640.00 | 37,900.00 | Nil |
| 1945–46 | 283,760.00 | 52,010.00 | 46,400.00 |
| 1946–47 | 243,760.00 | 52,010.00 | 11,400.00 |
| 1947–48 | 766,125.00 | 80,430.00 | 214,350.00 |
| 1948–49 | 378,845.00 | 80,690.00 | 7,350.00 |
| 1949–50 | 898,642.00 | 165,862.00 | 256,500.00 |
| 1950–51 | 628,790.00 | 150,462.00 | Nil |
| 1951–52 | 1,191,842.00 | 171,862.00 | 469,500.00 |
| 1952–53 | 631,990.00 | 156,462.00 | Nil |
| 1953–54 | 1,603,200.00 | 655,717.67 | 680,559.61 |
| 1954–55 | 1,371,800.00 | | |

In order for the bonds to be self-liquidating, and not in violation of Section 23, Article 10 of the State Constitution, the money to pay the interest and retire the bonds would necessarily have to come solely from the net proceeds derived from the operation of the buildings and facilities built by the money received from the sale of the bonds. I respectfully dissent.